**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WESTERN DIVERSIFIED
SERVICES, INC., an Illinois
corporation,

      Plaintiff - Appellant,

v.

HYUNDAI MOTOR AMERICA,
INC., a California corporation,

      Defendant - Appellee.

No. 03-4248

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:99-CV-84-B)**

---

Michael J. Kelley, (K.S. Cornaby and Ryan M. Harris, with him on the briefs)
Jones, Waldo, Holbrook & McDonough, P.C., Salt Lake City, Utah, for Plaintiff-
Appellant.

Robert B. Golden, (Howard N. Aronson with him on the brief) Lackenbach Siegel
LLP, Scarsdale, New York, for Defendant-Appellee.

---

Before **EBEL, McWILLIAMS**, Circuit Judges, and **FRIOT**, District Judge.[*]

---

[*]Honorable Stephen P. Friot, District Court Judge, Western District of
Oklahoma, sitting by designation.

**EBEL**, Circuit Judge.

This appeal involves a claim for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051-1127 (2000). We must determine if Plaintiff has raised a genuine factual issue as to whether Defendant's alleged infringement was willful, entitling Plaintiff to an award of Defendant's profits and attorneys' fees. The district court entered partial summary judgment in favor of Defendant on the trademark infringement claim and certified its order for immediate interlocutory review under Fed. R. Civ. P. 54(c). Plaintiff timely filed its notice of appeal. Our appellate jurisdiction is appropriate under 28 U.S.C. § 1291.

In addressing the issue of willfulness, we take this occasion to establish the appropriate definition of that term in the context of an award of profits. We hold that the willfulness required to support an award of profits under the Lanham Act typically requires an intent to appropriate the goodwill of another's mark. For the willful component of an award of attorney fees, we adopt the same definition of willful. On the facts of the instant case, we find that a sufficient factual dispute exists on these issues to warrant submission to a jury. Accordingly, we REVERSE.

## BACKGROUND

Plaintiff Western Diversified Services ("Western") markets and sells "extended" or "aftermarket" automobile warranties to consumers wishing to

purchase protection beyond the terms of a standard manufacturer's warranty. In connection with this service, Western owns two federally registered service marks: (1) "THE ADVANTAGE;®" and (2) "THE ADVANTAGE PLUS®." Western has used these marks in commerce since 1983 and sells approximately 15,000 warranties per month.

Defendant Hyundai Motor America ("Hyundai") first entered the U.S. automobile market in 1986, quickly experiencing soaring sales and growth. By September 1998, however, Hyundai cars became known for their maintenance problems and revenues seriously lagged. Responding to this perception, executives in Hyundai's marketing department ("Marketing") decided to offer a comprehensive manufacturer's warranty which they named "THE HYUNDAI ADVANTAGE." Prior to settling on the name, however, Marketing asked the Hyundai legal department ("Legal") for clearance, pursuant to company policy. Legal then referred the matter to outside intellectual property counsel ("Counsel") to conduct a trademark search. On September 16, 1998, Counsel issued an opinion letter to Hyundai stating that the use and registration of "THE HYUNDAI ADVANTAGE" was possible but subject to risk. Specifically, Counsel's letter pointed out that Western owned registrations for "THE ADVANTAGE" and "THE ADVANTAGE PLUS" and had shown a willingness to litigate.

Nevertheless, Counsel's ultimate opinion was that the use and registration of "THE HYUNDAI ADVANTAGE" was justifiable.

Since 1994, Hyundai had been selling "extended" warranties under the name "Hyundai Protection Plan" ("HPP"). When Hyundai began the overhaul of its manufacturer's warranty program in 1998, it decided to update the HPP warranties as well. This task was delegated to executives in Hyundai's assurance products division ("Assurance"), who initially decided to call the new HPP plans "Bumper-to-Bumper" and "Bumper-to-Bumper Plus."

Unfortunately, regulations in several states prohibited the use of the term "Bumper-to-Bumper" in Hyundai's particular warranty plans. As a result, Hyundai went back to the drawing board, and, in October 1998, Assurance executives internally selected the names "ADVANTAGE" and "ADVANTAGE PLUS" for the HPP warranties.

One month later, Western wrote to Hyundai's general counsel demanding that Hyundai cease use of the term "THE HYUNDAI ADVANTAGE" in connection with its manufacturer's warranty. Hyundai rejected the demand, and, shortly thereafter, Western filed suit against Hyundai in the U.S. District Court for the District of Utah.

Western's complaint alleged, inter alia, a service mark infringement claim under the Lanham Act, 15 U.S.C. § 1114. Western originally sought recovery

only based upon Hyundai's manufacturer's warranty, "THE HYUNDAI ADVANTAGE," but later amended its complaint to include Hyundai's extended warranties, "ADVANTAGE" and "ADVANTAGE PLUS."  Western sought a combination of monetary and injunctive relief, including an award of Hyundai's profits and attorneys' fees.  Despite the pendency of the lawsuit, Hyundai went forward with its new extended warranty program, developing a brochure describing its "ADVANTAGE" and "ADVANTAGE PLUS" extended warranties.

Prior to any discovery, Hyundai filed a motion for partial summary judgment under Fed. R. Civ. P. 56(c).  In a series of orders, the court granted the motion on the Lanham Act claims as they related both to Hyundai's manufacturer's warranty and to Hyundai's extended warranties.  The district court then issued a Rule 54(b) certification of its partial summary judgment orders for immediate interlocutory review.  On appeal, Plaintiff contests only the summary judgment order as it relates to Defendant's extended warranties, "ADVANTAGE" and "ADVANTAGE PLUS."

## DISCUSSION

**Standard of review**

We review the district court's grant of partial summary judgment <u>de novo</u> and must apply the same legal standard used by the district court.  <u>Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1326

(10th Cir. 1999).  Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## I.  Damages under the Lanham Act generally

The Lanham Act explicitly prescribes the range of monetary remedies available to a plaintiff who has successfully proven a trademark violation:

> When a violation of any right of the registrant of a mark . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).  In the instant case, Western seeks an award of the profits Hyundai earned from use of Western's mark and reasonable attorneys' fees.  As demonstrated below, the critical requirement of both remedies is a showing that the defendant willfully infringed the plaintiff's mark.

### A.  Award of profits

An accounting of profits is not automatically granted upon a showing of infringement.  See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131 (1947).  As the statute makes clear, any award of profits is "subject to the principles of equity."  15 U.S.C. § 1117(a).  However, it is not required that the

plaintiff demonstrate actual damages to sustain a profit award. Bishop v. Equinox Int'l Corp., 154 F.3d 1220, 1222 (10th Cir. 1998) ("Bishop I").

An award of profits in the absence of actual damages is usually predicated on one of two theories: (1) unjust enrichment; or (2) deterrence. See id. at 1222-1223. The unjust enrichment theory is based on the idea that trademarks are protected property rights. Id. at 1223. The misappropriation of that right, thus, results in an unjust enrichment even if the two parties are not in direct competition with each other. Id.; see also Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354, 362-63 (10th Cir. 1954) (noting the well-settled theory that a trademark infringer holds his profits in trust for the benefit of the other party). Similarly, the deterrence theory recognizes that an award of profits may be proper as a means to prevent willful trademark infringement. Bishop I, 154 F.3d at 1223.

Whatever the theory that motivates the rule, "a finding of actual damage remains an important factor in determining whether an award of profits is appropriate." Id. Thus, while the existence of the plaintiff's actual damages is not a prerequisite to an award of the defendant's profits, this issue remains relevant to our inquiry. Given the punitive nature of the remedy and the possible windfall to the plaintiff, the potential for inequity is necessarily heightened when a party seeks a profit award in the absence of actual damages. To that end, we

require a showing that Defendant's actions were willful to support an award of profits under 15 U.S.C. § 1117(a). Id.[1]

Even with a finding of willfulness, a court may still exercise its discretion to reduce or even eliminate a profit award in the name of fashioning an equitable remedy to meet the needs of each case. See, e.g., Estate of Bishop v. Equinox Int'l Corp., 256 F.3d 1050, 1055-56 (10th Cir. 2001) ("Bishop II"). This is accomplished by "carefully weighing the equities on both sides of the scale to determine whether, in [the] district court's judgment and within its wide discretion, the plaintiff may receive a portion of the infringing defendant's profits." Id. Thus, an award of profits involves a two-step process: (1) a finding of willfulness or bad faith; and (2) a weighing of the equities.

However, when considering a summary judgment motion, a court does not weigh the evidence except, of course, for the very unusual situation when all the equities are indisputably on one side. As a result, a court evaluating an award of profits claim at the summary judgment stage must confine its analysis to the first step: whether a genuine factual issue exists as to willful infringement.

---

[1]This standard is not universally applied among the circuit courts. While most courts basically agree that an award of profits in the absence of actual damages requires some kind of "intent" on the defendant's part, the precise articulation of the required state of mind varies from deliberate and knowing to willful and fraudulent. See McCarthy on Trademarks and Unfair Competition § 30:62 (4th ed. 1998).

**B.    Attorneys' Fees**

Under the Lanham Act, attorneys' fees may be awarded to the prevailing party only in "exceptional" cases.  15 U.S.C. § 1117(a).  While the Lanham Act provides no definition for the term, we have long held that an "exceptional case" is one in which the trademark infringement is "malicious, fraudulent, deliberate, or willful."  VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1107 (10th Cir. 1982); see generally Robin C. Larner, Annotation, Award of Attorneys Fees Under § 35(A) of Lanham Act (15 U.S.C. § 1117(a)) Authorizing Award in "Exceptional Cases", 82 A.L.R. Fed. 143 § 2(a) (1987).

Therefore, if Western raises a genuine factual issue with regard to willful infringement, it should survive summary judgment not only on the award-of profits-claim, but also on the request for attorneys' fees.

**II.    Willfulness**

This court has not previously identified the type of intent that constitutes "willfulness" sufficient to support an award of profits.  However, we have addressed this issue in our cases dealing with likelihood-of-confusion claims, where the defendant's intent is one factor among many.  See, e.g., Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1531-32 (10th Cir. 1994); Jordache Enters., Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1485 (10th Cir. 1987).  In Jordache Enterprises, we held that in determining whether the intent of

a defendant weighs for or against a finding of likelihood of confusion, "[t]he proper focus is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." 828 F.2d at 1485 (quoting Sicilia Di R. Biebow & Co. v. Cox, 732 F.2d 417, 431 (5th Cir. 1984)).

Acknowledging that it was treading into uncharted waters, the district court adopted this standard as the appropriate measure of willfulness for cases involving the award of profits. We agree with the district court's conclusion and hold that to support an award of profits under the Lanham Act in the absence of actual damages, a plaintiff must ordinarily show that the defendant intended to benefit from the goodwill or reputation of the trademark holder. Our decision is rooted in a recognition that an award of profits under the Lanham Act is truly an extraordinary remedy and should be tightly cabined by principles of equity. It is also for this reason that we do not adopt the more lenient approaches taken by some of our sister circuits. See, e.g., W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir. 1970) (describing willfulness as "an aura of indifference to [the] plaintiff's rights"); ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 966 (D.C. Cir. 1990) (noting that willfulness and bad faith "require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense"). We decline to adopt these standards as the general rule because "intent," as we understand the term, requires something more than

"indifference" or a mere "connection." It is a conscious desire. See Black's Law Dictionary 826 (8th ed. 2004) (defining "intention" as "[t]he willingness to bring about something planned or foreseen").

However, the standard we adopt today does not categorically preclude all other possibilities. Because an award of profits under the Lanham Act is grounded in equity, there may be other situations that constitute willful infringement even though the defendant does not intend to derive any benefit from the plaintiff's goodwill or reputation. For example, if the defendant deceives the plaintiff into thinking he has ceased infringing the trademark when in fact the illegal action continues, a finding of willfulness might be appropriate. Similarly, misrepresentation to the courts might constitute willful infringement. Finally, if the wrongdoer uses its own economic muscle to weaken a plaintiff who has threatened an infringement action, a finding of willfulness might be justified. At the end of the day, courts must be guided by familiar principles of equity, but we believe that situations such as those described above may be exceptions rather than the rule. However, those situations are not before us, so we do not need to explore the parameters of such possibilities. In the typical case, the willfulness required to support an award of profits in the absence of actual damages is the intent to benefit from the goodwill or reputation of another.

## III.    Analysis

Having concluded that the district court selected the appropriate standard, we now turn to its application of that standard. A careful examination of the opinion below indicates that the district erred both factually and legally in its analysis.

### A.    Articulating the appropriate legal standard

In the proceedings below, the district court held that "in order to successfully recover an award of Hyundai's profits, Western must show that Hyundai chose the name "THE HYUNDAI ADVANTAGE" with the intent to benefit from Western's reputation or goodwill."

This statement is wrong for two reasons. First, the district court confuses Hyundai's manufacturing warranty, "THE HYUNDAI ADVANTAGE" with its extended warranties, "ADVANTAGE" and "ADVANTAGE PLUS." The defendant's selection of "HYUNDAI ADVANTAGE" was not at issue in this particular summary judgment motion. The claims involving the manufacturer's warranties were already dismissed in the earlier summary judgment motion and were not appealed.

Second, to survive summary judgment, Western does not have to show that Hyundai's decision was made with the intent to benefit from Western's reputation

or goodwill. It needs only to raise a genuine issue on this material fact. <u>See</u> Fed. R. Civ. P. 56(c).

The district court's errors were not without consequence. First, by confusing the manufacturer's and extended warranties, the district court incorrectly cited facts in support of its argument that applied only to the manufacturer's warranty. For instance, as evidence that Hyundai did not intend to benefit from the goodwill of Western's mark, the district court noted (1) that Hyundai spent a substantial sum of money promoting its warranties; and (2) that it conducted a trademark search prior to launching the product. Both of these facts are correct in relation to the *manufacturer's* warranty, but they do not pertain to Hyundai's *extended* warranties. Second, by failing to articulate the summary judgment standard, the court did not grant Western the benefit of the evidentiary inferences to which it is entitled at this stage of the proceedings. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) ("[O]n summary judgment, the inferences to be drawn from the facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotations omitted, alteration in original).

Thus, the appropriately articulated standard should have been as follows: In order to survive summary judgment on its claim for Hyundai's profits, Western must raise a genuine factual issue about whether Hyundai chose the names

"ADVANTAGE" and "ADVANTAGE PLUS" for its extended warranties with the intent to benefit from Western's reputation or goodwill.

**B.      Presumption of an intent to benefit from the goodwill of another**

In our trademark cases dealing with the likelihood of confusion, we have held that the "deliberate adoption of a similar mark may lead to an inference of an intent to pass off goods as those of another . . . ." Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 927 (10th Cir. 1986); see also Universal Money Ctrs., 22 F.3d at 1532.  As the non-moving party, Western is entitled to the benefit of this presumption.  Matsushita Elec. Indus. Co., 475 U.S. at 587.  Even though we established this presumption in a likelihood-of-confusion case, we conclude that it is appropriate to apply the presumption here, particularly because our intent inquiry is the same in both situations.

**1.      Prior knowledge of the mark**

An issue critical to our analysis is the question of Hyundai's knowledge.  In its opinion below, the district court stated that

> it is clear that those responsible for choosing the "THE HYUNDAI ADVANTAGE" name for Hyundai's extended warranties did not know about Western's competing marks.  Logically, therefore, those in charge of choosing the name could not have intended to take advantage of Western or its goodwill. . . .  Hyundai's knowledge of Western's marks was obtained only *after* Hyundai had preliminarily decided to use "THE HYUNDAI ADVANTAGE".  Therefore, the undisputed evidence shows that no one within Hyundai chose "THE HYUNDAI ADVANTAGE" with the intent to benefit from Western's mark."

- 14 -

However, the above-quoted statement once again conflates Hyundai's manufacturer's warranty, "THE HYUNDAI ADVANTAGE," and its extended warranties, "ADVANTAGE" and "ADVANTAGE PLUS." The record clearly indicates that Hyundai learned of Western's marks on September 16, 1998, when it received an opinion letter from its outside counsel regarding the requested trademark search on Hyundai's manufacturer's warranty. It was not until October 1998 when executives at Hyundai's assurance products division chose the names "ADVANTAGE" and "ADVANTAGE PLUS" for Hyundai's extended warranties.

The district court also relies upon the deposition testimony of Denise Lowery, a member of the product assurance department which selected the name for the extended warranty, in which she stated that she had never heard of Western, their products, or their trademarks. But this assertion is potentially contradicted by Lowery's subsequent statements in which she maintained an opinion that the Hyundai warranty "could not be matched" by any other extended warranty on the market. This statement tends to show that Lowery had knowledge of her competition and, therefore, of Western's products.

Thus, while it seems that Hyundai did not know of Western's marks when it initially selected "THE HYUNDAI ADVANTAGE" as the name for its manufacturer's warranty, there is at least a genuine factual dispute as to whether it knew of the marks at the time it selected its extended warranties.

Hyundai argues, however, that it is inequitable to impute knowledge of Western's trademarks from one division of the company (Legal) to another (Assurance). In support of this proposition, Hyundai cites Securacomm Consulting, Inc. v. Securacom, Inc., a Third Circuit case in which the court refused to impute one former corporate officer's knowledge of a trademark to his successor because such an action was not consistent with the equitable considerations of the case. 166 F.3d 182, 187-88 (3d Cir. 1999).

We reject this argument. It is well established that a corporation is chargeable with the knowledge of its agents and employees acting within the scope of their authority. U.D. Sawyer v. Mid-Continent Petroleum Corp., 236 F.2d 518, 520 (10th Cir. 1956). Securacomm is distinguishable because it involved the imputation of knowledge gained several years earlier by a former officer. 166 F.3d at 187-88. At the time the officer left the corporation's employ, there was no reason to think that the corporation was infringing the plaintiff's trademark. Id. Here, we have two divisions of the same corporation, Legal and Assurance, working simultaneously on the same product, the Hyundai extended warranty. Notwithstanding the deposition testimony of Hyundai executives that "each department operated as its own island," we see no reason in equity or otherwise to exempt Hyundai from the general principle that an employee's

- 16 -

knowledge gained in the course and scope of the employment is imputed to the corporation, and, therefore, to all of its departments.

As a result, we conclude that there is at least a genuine factual issue as to whether Hyundai knew of Western's trademark when it selected the names "ADVANTAGE" and "ADVANTAGE PLUS" for its extended warranties.

### 2. The larger factual context of the case

In determining whether to apply the presumption that deliberate adoption of a similar mark leads to an inference of an intent to pass off goods as those of another, "mere knowledge [of a similar mark] should not foreclose further inquiry." GTE Corp. v. Williams, 904 F.2d 536, 541 (10th Cir. 1990). Rather, we must look to "the larger factual context of the case." Universal Money Ctrs., 22 F.3d at 1532. Having done so, we remain unconvinced that Western has failed to raise a genuine factual issue as to intent.

In Universal Money Centers, even though we acknowledged that the defendant's in-house counsel knew of the trademarked term, we did not find a factual dispute over the intent to benefit from the goodwill of another in part because the defendant had spent nearly $60 million in promoting its own product. Id. at 1532. In the instant case, while the record establishes that Hyundai spent nearly $25 million promoting its manufacturer's warranty, there is nothing to

indicate that it spent any significant resources in promoting its extended warranty program.

We are also persuaded by the Sixth Circuit's reasoning in WSM, Inc. v. Tenn. Sales Co., 709 F.2d 1084 (6th Cir. 1983), in which the court stated:

> [the defendant] was aware of [the plaintiff's] mark, yet with an infinite variety of non-similar designs available, it chose a virtually identical design, knowing that it intended to sell that design on identical goods in the same channels of trade as that in which [the plaintiff's] mark moved. It is reasonable to infer therefrom that [the defendant] intended to deceive the public concerning the origin of the goods. The district court thus properly awarded profits to [the plaintiff.]

Id. at 1087.[2]

Here, the evidence indicates that Hyundai appropriated not one, but two of Western's marks, "THE ADVANTAGE" and "THE ADVANTAGE PLUS." Furthermore, Hyundai's marks were not only similar to Western's, they were identical and referred to substantially similar products aimed at the same group of consumers, i.e. automobile purchasers.

Considering the larger factual context of the case in conjunction with the factual dispute over Hyundai's knowledge, we are compelled to presume that

---

[2]WSM is particularly persuasive because (1) it arose in a summary judgment context; and (2) it deals with an award of profits, unlike Universal Money Centers, which deals with the likelihood of confusion. WSM, 709 F.2d at 1086, 1087; Universal Money Ctrs., 22 F.3d at 1529.

Hyundai's deliberate adoption of two similar marks could lead to an inference that it intended to benefit from Western's goodwill.

But we do not hold as a matter of law that Hyundai actually possessed such an intent. Like almost every presumption in the law, the one we apply today may be rebutted by competent evidence in front of a jury. Hyundai argues that its initial selection of the "Bumper-to-Bumper" name for its extended warranty and the prominence of its corporate logo on the warranty brochures shows that it did not have the requisite intent for willful infringement. These arguments are not without merit, and it may well be that they will win the day when considered by the jury. But at this point in the proceedings, all that can be said is that the parties have established a genuine factual dispute over the intent required for willful infringement. Under Fed. R. Civ. P. 56, nothing else need be shown for the plaintiff to avoid summary judgment.

## CONCLUSION

For the foregoing reasons, we conclude that Plaintiff has raised a genuine issue of material fact with regard to willful infringement. Therefore, it was error for the district court to grant summary judgment in favor of Defendant on Plaintiff's Lanham Act claims for lost profits and attorneys' fees as they relate to Defendant's extended warranties. Accordingly, we REVERSE.