**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KLEIN-BECKER USA, LLC, a Utah
limited liability company; KLEIN-
BECKER IP HOLDINGS, LLC, a
Nevada limited liability company,

      Plaintiffs - Appellees,

v.

PATRICK ENGLERT, d/b/a Mr Finest
Supplements, Mrfinestsupplements.com,
Mrfinest.com, Strivectinsales@aol.com,
Skin-Cream-Sales, Strivectin-Sales,

      Defendant - Appellant.

No. 12-4076

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:06-CV-00378-TS)**

---

Andrew H. Koor, Suddarth & Koor, L.L.C., O'Fallon, Missouri, appearing for Appellant

Jason M. Kerr (David R. Parkinson, with him on the brief), Price, Parkinson and Kerr, PLLC, Salt Lake City, Utah, appearing for Appellees

---

Before **LUCERO, HARTZ,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

Klein-Becker USA and Klein-Becker IP Holdings (collectively "Klein-Becker") sued Patrick Englert and Mr. Finest, Inc., for trademark infringement, copyright infringement, false advertising, and unfair competition under the Lanham Act; false advertising under the Utah Truth in Advertising Act; unfair competition under the Utah Unfair Practices Act; fraud; civil conspiracy; and intentional interference with existing and prospective business relations. Mr. Englert was sanctioned several times for failing to comply with court orders and discovery schedules.[1] The third and final sanction resulted in the entry of default judgment for Klein-Becker on all remaining claims. A bench trial determined damages.

Mr. Englert appeals the district court's entry of default judgment against him, determination of his personal liability and the amount of damages owed, grant of a permanent injunction, denial of a jury trial, and refusal to allow Mr. Englert to call a certain witness. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

Klein-Becker owned and controlled all aspects of the trademarks StriVectin-SD and StriVectin (U.S. Trademark Registration Numbers 2,760,414 and 3,165,013) at all

---

[1] The district court also granted partial summary judgment to Klein-Becker for its trademark infringement claims. Mr. Englert does not appeal that judgment.

times relevant to this appeal.[2]  The StriVectin line of skin care products could only be sold through authorized sellers that Klein-Becker approved and trained.

Mr. Englert has never been an authorized seller of StriVectin.  Nonetheless, in April 2006, Klein-Becker discovered that Mr. Englert was advertising and selling products marketed as StriVectin on eBay without authorization.  Klein-Becker filed an Electronic Notice of Claimed Infringement with eBay on the belief that Mr. Englert either stole or counterfeited those items, and requested that eBay remove the alleged unlawful listings.  In response, eBay removed a portion of Mr. Englert's listings.  Mr. Englert challenged the removal, claiming that the items did not involve infringing materials and that Klein-Becker was required to file a complaint in federal court.

Some of the StriVectin products that Mr. Englert sold online were acquired in March 2005 as part of a scheme whereby Mr. Englert posed as a General Nutrition Center ("GNC") store to purchase StriVectin products.  GNC stores received special pricing from Klein-Becker, below regular wholesale rates.  Mr. Englert purchased $82,050 of Klein-Becker's products directly from Klein-Becker by fraudulently altering the "Bill To" and "Ship To" addresses on GNC invoices to pose as a GNC store and purchase StriVectin at the special GNC rate ("the GNC scheme").  He sold those products online

---

[2] After the trial, the StriVectin-related assets were sold to a third party.  Because the events and injuries relevant to this lawsuit occurred before that transaction, and because Klein-Becker retains all interest in the proceeds of this lawsuit, Klein-Becker remains the real party in interest.

through eBay and other commercial web platforms, including his commercial websites, mrfinestsupplements.com and mrfinest.com.

On January 3, 2007, StriVectin products worth $320,000 were stolen from a Salt Lake City warehouse. Klein-Becker tracked these products by lot numbers, and the district court granted Klein-Becker's Ex Parte Emergency Motion for a Temporary Restraining Order and Seizure Order to resecure the products and stop their unlawful sales. While carrying out that order on March 1, 2007, Klein-Becker found $36,000 in stolen products at Mr. Englert's residence, where he conducts business as Mr. Finest, Inc., and as other alter egos through which he sold StriVectin products. Evidence at Mr. Englert's residence indicated that he had already sold additional units of stolen StriVectin online. Klein-Becker was able to repurchase 16 units of the stolen StriVectin from Mr. Englert's online platforms.

**B. *Procedural History***

Klein-Becker sued Mr. Englert on May 9, 2006, for alleged trademark infringement, copyright infringement, false advertising, and unfair competition under the Lanham Act; false advertising under the Utah Truth in Advertising Act; unfair competition under the Utah Unfair Practices Act; fraud; civil conspiracy; and intentional interference with existing and prospective business relations.

On February 9, 2007, Klein-Becker moved for sanctions against Mr. Englert for delaying and obstructing court orders to expedite discovery before the preliminary injunction hearing. A magistrate judge found that Mr. Englert's discovery responses

were "inadequate" and "almost contemptuous." *Klein-Becker USA, LLC v. Englert*, No. 2:06-CV-378 TS, 2011 WL 147893 at *7 (D. Utah Jan. 18, 2011).

On March 21, 2007, Klein-Becker renewed its motion for sanctions after discovering that Mr. Englert had withheld additional information from discovery. On June 20, 2007, the magistrate judge found that Mr. Englert "deliberately withheld information and intentionally caused delay." *Id.* at *9. He issued sanctions, requiring Mr. Englert to pay Klein-Becker's expenses related to the motion to compel and the renewed motion for sanctions. He warned Mr. Englert that sanctions would escalate if the violations continued.

Mr. Englert was represented by counsel until April 23, 2007, when the district court granted Mr. Englert's counsel's motion to withdraw. He proceeded pro se throughout the rest of the district court proceedings.

On August 2, 2007, Klein-Becker filed a motion for partial summary judgment, which the district court granted in part on the trademark infringement claim. On January 23, 2008, after Klein-Becker filed a third set of motions for sanctions, the district court ordered Mr. Englert to pay Klein-Becker $75,411.45 for expenses, including attorney fees, related to filing and prosecuting motions for sanctions during discovery.

On March 27, 2008, the district court found that Mr. Englert had failed to comply with the magistrate judge's order that he either appear in person or retain counsel and that he provide a complete privilege log no later than June 30, 2007. He granted Klein-

Becker's motion for sanctions and, on March 27, 2008, entered a default judgment against Mr. Englert on all remaining claims pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi).

On January 18, 2011, after a bench trial on damages, the district court entered judgment in favor of Klein-Becker for $773,384.31, including $673,988.17 for Lanham Act damages, $78,056.14 for fraud damages, $11,340 for stolen property, and $10,000 for copyright damages. The court also awarded Klein-Becker all attorney fees and costs. Finally, the district court determined that Klein-Becker was entitled to a permanent injunction, but declined Klein-Becker's request to make the preliminary injunction permanent because circumstances had changed. Instead, the court ordered Klein-Becker to submit a proposed permanent injunction within 10 days. Upon inspection of the record, this court was unable to locate the permanent injunction. We ordered both parties to supplement the record with the permanent injunction, but neither party could do so. The appeal was then abated and the case was returned to the district court, where it addressed the issue. The district court issued a permanent injunction on March 5, 2013, and the abatement was lifted on March 8, 2013.

Mr. Englert appeals the district court's (1) entry of default judgment against him on all existing claims as sanctions for his discovery abuses, (2) award of damages to Klein-Becker, (3) determination that Klein-Becker is entitled to a permanent injunction, (4) denial of his demand for a jury trial, and (5) denial of his request to call an unlisted witness.

## II.   DISCUSSION

**A.** *Rule 37 Sanctions*

Based on Mr. Englert's discovery abuses, the district court decided that Klein-Becker was entitled to judgment on all claims against Mr. Englert/Mr. Finest, Inc.  Under Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure, a district court may issue sanctions, including "default judgment against the disobedient party" when a party disobeys a discovery order.  *Id.*

Default judgment is generally considered a harsh sanction that should be used only when a party's noncompliance is due to "willfulness, bad faith, or any fault of the [disobedient party]" and not when a party is unable to comply with a discovery order.  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)); *see also In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987) ("We have defined a willful failure as 'any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.'"  (quoting *Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir.1965))).

Mr. Englert argues that the court's imposition of default judgment was unnecessarily harsh because he was a pro se litigant, attempted to comply with the discovery orders, and was not on notice that the district court might sanction him with a default judgment.

We review discovery sanctions for abuse of discretion.  *See United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009).  Sanctions must be "just" and related to the

claim "at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). To determine if a sanction such as dismissal or default judgment is appropriate, courts should consider "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant." *Id.* at 921 (quotations omitted).

The default judgment was entered after three motions for discovery sanctions. On October 28, 2006, in response to Klein-Becker's motion for expedited discovery, the magistrate judge ordered Mr. Englert to file a written response to Klein-Becker's interrogatories and produce any relevant documents by December 2006. He did not do so. On February 9, 2007, Klein-Becker filed its first motion for sanctions against Mr. Englert for failing to comply with the discovery order or, alternatively, a motion to compel his discovery responses. The magistrate judge took Klein-Becker's motion for sanctions under advisement and, on February 12, 2007, ordered that the parties meet and arrange completion of discovery.

On February 23, 2007, the magistrate judge held a hearing on Klein-Becker's first motion for sanctions. The judge determined that Mr. Englert had failed to respond to his discovery orders until February 13, 2007, and that the responses were deficient. He ordered Mr. Englert to submit revised responses by March 2, 2007, and warned Mr. Englert that the court "has the power under Rule 37, its inherent power and 28 U.S.C. § 1927 to impose sanctions . . . which may include striking defenses, recommending that the district judge enter summary judgment, recommending that the district judge impose

a preliminary injunction, recommending that facts be found as uncontroverted, and awarding expenses and attorneys fees." Memorandum Decision and Order Granting Motion to Compel (Feb. 28, 2007).

Mr. Englert continued to fall short of meeting his discovery obligations. On March 21, 2007, Klein-Becker filed a second (and renewed) motion for sanctions. On June 13, 2007, the magistrate judge ordered Mr. Englert to either appoint counsel or appear *pro* se and to appoint counsel for Mr. Finest, Inc., by June 30, 2007. On June 20, 2007, the magistrate judge granted Klein-Becker's motion for sanctions based on Mr. Englert's continued noncompliance. He ordered Mr. Englert to pay Klein-Becker's expenses related to its motions to compel and motions for sanctions. He also ordered Mr. Englert to provide a privilege log and offer Klein-Becker 10 dates on which he could be available for deposition by June 30, 2007. The magistrate judge reminded Mr. Englert that Rule 37 gives the court the power to issue sanctions, including entry of default judgment, and warned that he would "not hesitate to impose more severe sanctions including recommending terminating sanctions be applied by the district judge" if Mr. Englert did not comply with these orders. Memorandum Decision and Order Granting in Part Renewed Motion for Sanctions and Motion for Sanctions (June 20, 2007). Mr. Englert failed to appoint counsel, appear *pro se*, or provide a privilege log by June 30, 2007.

Finally, on July 16, 2007, Klein-Becker filed a third motion for sanctions. After August 6, 2007, motions were no longer referred to the magistrate judge and were

addressed by the district court. On March 27, 2008, the district court granted Klein-Becker's third motion for sanctions. Although Mr. Englert contended that he could not provide a privilege log because Klein-Becker seized the underlying documents from him pursuant to a seizure order on March 1, 2007, many of those documents were returned, and the court determined that Mr. Englert did not even attempt to list which documents were privileged.

Applying the factors from *Ehrenhaus*, the district court found that warnings from the magistrate judge placed Mr. Englert on notice that he would be culpable for any future violations and that Mr. Englert's actions prejudiced Klein-Becker and interfered with the judicial process. In light of these factors, the court determined that sanctions were appropriate and entered default judgment for Klein-Becker and against Mr. Englert and Mr. Finest Supplements, Inc., on all remaining claims in the case.

We have reviewed the record and can find no fault in the court's analysis. The court did not abuse its discretion by entering default judgment. We affirm the district court's Rule 37 decision.

**B. *Personal Liability***

The district court established Mr. Englert's personal liability through its entry of partial summary judgment and default judgment. Mr. Englert does not challenge the grant of partial summary judgment, which found that none of Mr. Englert's companies except Mr. Finest Supplements, Inc., had a "legal existence separate from Patrick Englert

-10-

and/or former Defendant Thomas Englert."[3]  Suppl. Appx., Vol. I at 169.  The court

found liability for both Mr. Finest Supplements, Inc., and for Mr. Englert personally.  Mr.

Englert did not challenge the finding of his personal liability in this partial summary

judgment ruling.

The district court also established Mr. Englert's personal liability through the entry

of default judgment against him for his noncompliance with discovery orders.  In that

decision, the court imposed sanctions against Mr. Finest Supplements, Inc., for failure to

obtain counsel, and sanctioned Mr. Englert personally for failure to provide a privilege

log.  Because of these sanctions, the district court entered default judgment against both

Mr. Finest Supplements, Inc., and Mr. Englert in his personal capacity on all remaining

claims without performing a formal corporate veil piercing analysis.[4]

Whether courts may establish personal liability through the entry of summary or

default judgment is a legal question.  *See NLRB v. I.W.G., Inc.*, 144 F.3d 685, 689 (10th

Cir. 1998) ("Whether a corporate veil ought to be pierced is a question of law.").  We

review legal questions de novo.  *See Hofer v. Unum Life Ins. Co. Of Am.*, 441 F.3d 872,

879 (10th Cir. 2006).

---

[3] Early in this litigation, the district court granted the parties' stipulation to dismiss without prejudice all claims against Thomas Englert, Patrick Englert's father as well as the owner and technical administrator for the websites on which StriVectin was sold.

[4] Nothing in the Appellants' brief contests the default judgment entered against Mr. Finest Supplements.

Although this court has not addressed the issue, other circuits have held that a district court may establish personal liability through entry of default judgment. *Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 93 (1st Cir. 2010) ("[T]he District Court did not abuse its discretion by granting default judgment [against the individual] . . . as a discovery sanction."); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) (finding personal liability for all defendants on default judgment because of their involvement with defendant corporation). We agree that personal liability may be established through entry of default judgment. The district court properly established Mr. Englert's liability prior to the bench trial on damages, and no further findings on the issue of Mr. Englert's personal liability were necessary.

## C. *Damages*

### 1. *Klein-Becker's Entitlement to Disgorged Profits Under the Lanham Act*

We review for abuse of discretion a district court's decision to award a portion of the defendant's profits to a prevailing plaintiff as damages in a trademark infringement case. *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1055 (10th Cir. 2001). Under the Lanham Act, plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits. 15 U.S.C. § 1117(a); *see also Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947) (holding that profits are not automatically awarded as damages for trademark infringements); *Western Diversified Servs., Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005) (holding that either actual damages or willful actions

will merit the award of disgorgement of profits).  In addition, because disgorgement of profits is an equitable remedy, the district court must weigh "principles of equity" before awarding disgorged profits.  *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222 (10th Cir. 1998) (quoting 15 U.S.C. § 1117(a)).

### a.  *Actual Damages*

The district court found that, although Klein-Becker did not seek recovery of actual damages, Klein-Becker had established that it had incurred actual damages from Mr. Englert's actions.  The Lanham Act does not require that an exact dollar amount of actual damages be shown, only that the plaintiff establishes that it suffered actual damages.  *See Western Diversified*, 427 F.3d at 1272 (citing 15 U.S.C. § 1117(a)).

Klein-Becker's proposed findings of fact, filed before the bench trial on damages, alleged that Mr. Englert's sales of its products "undermine[d] the brand integrity, brand reputation and . . . goodwill" that it had established.  Docket No. 313 at 7.  In Mr. Englert's proposed findings of fact, filed less than a month after Klein-Becker's, Mr. Englert adopted almost the same language, agreeing with Klein-Becker that his sales of its products "undermines the reputation and goodwill" of the brand and hurts Klein-Becker's "relationships with authorized resellers, as well as their competitiveness in the cosmetics industry."  Docket No. 317 at 6.  Because both parties agreed to these harms in their proposed findings of facts, the district court found that Klein-Becker established actual damages.

**b.** *Willfulness*

In *Western Diversified*, we held that the willfulness required for a disgorgement award is the "intent to benefit from the goodwill or reputation of the trademark holder." 427 F.3d at 1273-74. "Deliberate adoption of two similar marks" can give rise to an inference "that [the defendant] intended to benefit from [the plaintiff's] goodwill." *Id.* at 1277. Here, the mark on the products distributed by Mr. Englert was not just similar to Klein-Becker's mark. It was identical.

The district court found that Mr. Englert's use of Klein-Becker's registered mark was sufficient to support the inference that Mr. Englert acted willfully and in bad faith and that awarding disgorgement of Mr. Englert's profits to Klein-Becker would meet the equitable purpose of preventing the defendant's unjust enrichment. Because Klein-Becker properly established that Mr. Englert had appropriated its registered mark, we agree with the district court that willfulness may be inferred. Thus, Klein-Becker was entitled to disgorgement of profits.

**c.** *Equitable Considerations*

Finally, before awarding disgorgement of profits, courts must also weigh the equities to fashion a remedy that matches the harm. *See id.* at 1272. The district court found that the equitable factors—including Klein-Becker's lost sales, Mr. Englert's benefitting from Klein-Becker's goodwill, and Mr. Englert's deception of customers—supported awarding disgorgement of Mr. Englert's profits to Klein-Becker. We agree with this analysis.

-14-

* * *

The district court did not abuse its discretion in deciding that Klein-Becker was entitled to disgorgement of profits because Klein-Becker incurred actual damages, Mr. Englert engaged in willful infringement, and the equities favored disgorgement of Mr. Englert's profits to Klein-Becker. We affirm the district court's decision to award disgorgement of Mr. Englert's profits to Klein-Becker and now turn to the court's calculation of this award.

### 2. *Amount of Profits*

Although we review the district court's decision to award disgorgement of profits from trademark infringement for abuse of discretion, we review the amount awarded for clear error and the district court's method for determining that amount de novo. *FTC v. Kuykendall*, 371 F.3d 745, 763 (10th Cir. 2004). Under the Lanham Act, plaintiffs in trademark infringement cases may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction." 15 U.S.C. § 1117(a).

To assist the court in arriving at the appropriate award for disgorgement of profits, the plaintiff is "required to prove defendant's sales only," while the defendant has the burden of proving "all elements of cost or deduction claimed." *Id.*; *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (explaining that, under the Lanham act, the "plaintiff has only the burden of establishing the defendant's gross

-15-

profits [(total sales)] from the infringing activity with reasonable certainty," and the "defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead.").

Courts have wide discretion to fashion appropriate equitable remedies such as disgorgement of profits. *See Bishop*, 154 F.3d at 1222. Although plaintiffs must generally establish damages with "specificity," some estimation is acceptable if necessitated "in part [by] the Defendants' poor record keeping." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1242 (10th Cir. 2006).

The district court found that Klein-Becker established with reasonable certainty Mr. Englert's "gross sales" through PayPal records. *Klein-Becker, Inc.*, 2011 WL 147893 at \*12. The court found that Mr. Englert's sales of StriVectin products totaled at least $673,988.17, and were likely much higher because Mr. Englert admitted to accepting payment other than through PayPal for StriVectin sales. Nonetheless, because the district court could not determine how much more it should add to the PayPal total to calculate the exact amount of Mr. Englert's sales, it accepted the PayPal sales records submitted by Klein-Becker as an appropriate measure of Mr. Englert's sales.

For his part, Mr. Englert failed to meet his Lanham Act burden of establishing any "cost or deduction" to be subtracted from the sales numbers established by Klein-Becker. *Id.* At the bench trial for damages, Mr. Englert made no effort to present evidence showing such offsets. Although evidence showed that Mr. Englert incurred unspecified

costs associated with his purchases of StriVectin products, he failed to provide any records showing whether those purchases were for products sold through PayPal or through other methods. This made it impossible for the district court to determine whether subtracting those costs from the sales figures presented by Klein-Becker would have produced an accurate measure of Mr. Englert's profits.

Thus, the district court did not err when it set the profits award at $673,988.17—the total sales established by Klein-Becker minus the total offsets established by Mr. Englert, which were nonexistent.

### 3. *Fraud Damages*

In addition to disgorgement of Mr. Englert's profits, Klein-Becker was entitled to fraud damages related to the GNC scheme. Utah courts allow "recovery for lost profits or other related consequential damages in a fraud action" if the damages "can be proven with reasonable certainty and are a reasonably foreseeable consequence of the defendant's act." *Ong Int'l Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 457 (Utah 1993).

We apply the same clear error standard of review for fraud damages awarded by the district court as we do for review of Lanham Act damages. *See Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162, 165-66 (10th Cir. 1975) (reviewing for clear error the amount of fraud damages to be awarded under state law and de novo for the method for determining that amount). Damages can be measured as the difference between the value received as a result of fraud and the fair value that would have been received "had there been no fraudulent conduct." *Affiliated Ute Citizens of*

-17-

*Utah v. United States*, 406 U.S. 128, 155 (1972); Dan B. Dobbs, Law of Remedies §41.1(1) (2d ed. 1993) ("[O]ne whose money or property is taken by fraud . . . is entitled to restitution measured by the defendant's gain if the victim prefers that remedy to the damages remedy.").

Mr. Englert impersonated a GNC store, which led Klein-Becker to sell him StriVectin products at a rate that was below even their wholesale price. Not only was Mr. Englert not a GNC store, he also was not authorized to buy StriVectin at the wholesale price because he was not an authorized reseller of the product. Had Mr. Englert properly represented himself to Klein-Becker, he would have had to pay retail price for StriVectin. The district court did not err in determining that Klein-Becker was entitled to the difference between the GNC price and the retail price, which amounted to $78,056.14 in fraud damages.

**D.** *Permanent Injunction*

Mr. Englert argues on appeal that Klein-Becker should not be entitled to a permanent injunction against him. We review entry of an injunction for abuse of discretion. *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961 (10th Cir. 2002). The district court analyzed the factors for issuing an injunction—"(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Klein-*

*Becker, Inc.*, 2011 WL 147893 at *17 (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)).

The district court entered an injunction based on Mr. Englert's liability under several claims, including the Lanham Act claims and the claims under the Utah Truth in Advertising Act and the Utah Unfair Practices Act. The court determined that, absent a permanent injunction barring Mr. Englert from using Klein-Becker's trademarks or selling its products, Klein-Becker's interests could continue to be harmed. The court found Klein-Becker's injury to outweigh any interest Mr. Englert had in continuing to violate Klein-Becker's trademarks and found that a permanent injunction was "appropriate and necessary to prevent future violations of the law" by Mr. Englert. *Id.*

Mr. Englert argues that because Klein-Becker sold its interest in the StriVectin line of products, it can no longer show irreparable harm from his sales. Even so, as the district court found, an injunction barring Mr. Englert from selling Klein-Becker products would prevent future harm to Klein-Becker from unlawful actions by Mr. Englert without placing a significant burden on Mr. Englert's interests or adversely affecting the public interest.

We discern no abuse of discretion in the district court's analysis of the factors supporting the entry of a permanent injunction. We therefore affirm the district court's decision to enter an injunction.

**E. *Mr. Englert's Other Claims on Appeal***

**1. *Jury Demand***

Mr. Englert claims that the district court violated his right to a jury trial. Mr. Englert's first demand for a jury trial was made on May 19, 2008, almost a year after the district court entered default judgment against him. He argued that he had relied on Klein-Becker's jury request in its initial and amended complaints. The magistrate judge struck Mr. Englert's jury demand as untimely and concluded that a jury trial was not constitutionally required because default judgment had been entered. Fed. R. Civ. P. 55(b)(2) (establishing that a jury is only required in evidentiary hearings to determine damages after entry of default judgment if there is a "federal statutory right." ).

The magistrate judge informed Mr. Englert that he could file a notice of his objection in the district court within 10 days. Mr. Englert never filed an objection. Because he never formally objected to the magistrate judge's ruling on his jury demand, Mr. Englert waived this argument on appeal. *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

**2. *Calling a Witness***

Mr. Englert claims the district court erred by refusing to allow him to call a witness during the trial. We review this ruling for abuse of discretion. *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1079 (10th Cir. 2009); *see United States v. Talk*, 13 F.3d 369, 371 (10th Cir. 1993) (reviewing the district court's admission of an unlisted rebuttal witness for abuse of discretion).

Mr. Englert chose not to present any evidence or call any witnesses during his case in chief. Instead, he asked to question one of Klein-Becker's witnesses during cross-examination on issues that were outside the scope of Klein-Becker's direct examination. The district court denied that request, noting that Mr. Englert had not listed the witness on any of the witness lists he had submitted to the court. The district court also denied Mr. Englert's request to file an amended pleading to add the witness to his witness list.

The district court did not abuse its discretion by refusing to allow Mr. Englert to cross-examine a witness on topics unrelated to the direct examination or to call a witness whom he did not attempt to call during his case in chief. *See Philadelphia & Trenton R. Co. v. Stimpson*, 39 U.S. 448, 457 (1840) ("A party has no right to cross-examine any witness, except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him on other matters, he must do so by making the witness his own; and calling him as such, in the subsequent progress of the cause."); *United States v. Smaldone*, 484 F.2d 311, 319 (10th Cir. 1973) (holding that the trial court properly sustained objections to cross examination questions that were beyond the scope of the direct examination and attempted to establish the cross-examiner's theory of the case). We affirm the district court's determination that Mr. Englert could not call the witness.

### III.   CONCLUSION

We affirm the district court's judgment.

-21-