FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TIFFANY GRAYS,

    Plaintiff - Appellant,

v.

AUTO MART USA, LLC; JORGE
PACHECO; AUTO MART USA2;
DANIEL RAMIREZ; JB OVALLE;
DONNIE MCELROY; MARCO
SANDOVAL; AUTO MART; JAY
BARBAR,

    Defendants - Appellees.

No. 21-1312
(D.C. No. 1:18-CV-01761-MSK-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Tiffany Grays, pro se, appeals from the district court's final judgment in favor

of defendants on multiple claims arising from her attempt to buy a car, challenging

several of the district court's rulings. Exercising jurisdiction under 28 U.S.C. § 1291,

we affirm the district court's judgment as to the challenged rulings but remand for the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

limited purpose of allowing the district court to address an award of expenses to Grays related to the filing of a motion to compel.

## I.

Grays located a used Mitsubishi Outlander for sale on defendant Auto Mart's website.[1] She called to confirm it was still available and to ask about signs on Auto Mart's lot stating, "Ask About Our Credit Approval Guaranteed" and the like. She was informed the Outlander was available and advised that everyone gets approved for financing. Once at the dealership, she filled out a credit application. She was then told the Outlander had a salvage title, so she instead settled on a used Dodge Journey. After some haggling about price and warranty, she signed a sales contract and took possession of the Journey, with initial financing by Auto Mart subject to assignment of the loan to another financial institution. Throughout the process, several Auto Mart employees repeatedly told Grays that Auto Mart would run only a "soft" credit check, that is, one that would not affect her credit score.

Several days after Grays left with the Journey, Auto Mart informed her it was unable to assign the loan and she would have to return the car. When she returned it, she was again told that only a soft credit check had been run. And in a letter Auto Mart sent to Grays a couple of weeks later confirming it could not obtain financing for her, Auto Mart checked a box indicating it had not submitted her credit application to any other creditors, which apparently would have triggered a "hard"

---

[1] Grays named three "Auto Mart" defendants: Auto Mart USA, LLC; Auto Mart USA2; and Auto Mart. For convenience, we refer to all three as "Auto Mart."

2

credit check. But soon thereafter, Grays began receiving letters from lenders stating that Auto Mart had tried to get credit approval on her behalf, and she noticed hard credit checks on her credit report, which allegedly caused her credit score to drop about 75 points. According to Grays, one lender in fact approved a loan but defendants refused to submit the necessary documents because Grays is "a dark-skinned woman who refused to accept the bullying and fraudulent misrepresentations of the multiple men she dealt with," R., Vol. I at 73, and Auto Mart did not want to pay for the warranty it agreed to.

After Grays was unable to persuade Auto Mart to contact the credit reporting agencies and fix the problem, she filed this action asserting twenty claims against Auto Mart and six of its employees. Her claims included violations of several federal laws: the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681x; the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667f; the Electronic Signatures in Global and National Commerce Act (E-Sign Act), 15 U.S.C. §§ 7001–7031; and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f. Grays also asserted multiple claims under Colorado law, including, as relevant to this appeal, a claim of negligent misrepresentation.

Defendants moved to compel arbitration based on an arbitration provision in the sales contract Grays signed. The district court denied the motion as to the individual defendants because they were not signatories to the sales contract. The district court granted the motion as to Auto Mart but limited to claims that arose from or related to the sales contract. The court determined that claims involving wrongful

3

inducement to shop at Auto Mart (by not disclosing on the website that the Outlander had a salvage title) and the promise of a soft credit check were not subject to mandatory arbitration because they did not arise under or relate to the sales contract.

While the arbitration proceeded, the district court ruled on a number of motions. Several of those rulings, set forth in a comprehensive order, *see* R., Vol. IV at 313–49, are relevant to this appeal.

The district court granted defendants summary judgment on claims or parts of claims, including parts of the FCRA claim, that were outside the arbitration, namely, any claims or parts of claims relating to Grays' initial interest in the Outlander and actions occurring after she returned the Journey. The court determined that portions of the FCRA claim arising from Grays' decision to purchase the Journey or Auto Mart's rescission of that purchase were subject to mandatory arbitration or would be precluded if Grays failed to raise them in arbitration. The court also expressed an intention to grant summary judgment to defendants on two other sets of claims pursuant to Fed. R. Civ. P. 56(f)(3):[2] (1) claims against all defendants related to Grays' initial interest in buying the Outlander on the ground that she sustained no cognizable legal injury sufficient to confer standing and (2) Auto Mart's liability on the TILA and E-Sign Act claims.

___

[2] Rule 56(f)(3) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

The district court denied summary judgment to Grays on two state law claims involving common law fraud stemming from Auto Mart's representations about credit approval, a soft credit check, and salvage titles as related to the Outlander. The court granted summary judgment to her on whether the individual defendants had acted as Auto Mart's agents during the relevant events, concluding they had. Based on that agency relationship, the court stayed the action as to any remaining claims against the individual defendants that overlapped with the pending arbitration claims.

The district court also denied Grays' motions to compel discovery and for sanctions related to discovery conduct, with one exception relevant to this appeal concerning the production of "ProMax data." The court sustained Grays' objections to the magistrate judge's denial of reasonable expenses (but not attorney's fees) arising from having to file a motion to compel production of the ProMax data and ordered Grays to "file an affidavit and supporting documentation itemizing the reasonable expenses she incurred specifically with regard to moving to compel production of the ProMax data." R., Vol. IV at 346. Grays filed a responsive affidavit with supporting documentation seeking almost $12,000 in expenses, including $5,000 in emotional and mental anguish. Defendants responded, and Grays filed a reply, but it appears the district court left the matter unresolved when it issued its final judgment.

Meanwhile, in the arbitration, Grays raised fifteen claims. For purposes of this appeal, it is sufficient to note that Grays did not assert an FCRA claim. The

5

arbitrator ruled in Auto Mart's favor on all but one claim—a state law claim for negligent misrepresentation regarding the soft credit check. However, the arbitrator awarded Grays no monetary damages because Grays failed to prove any pecuniary injury caused by the hard credit checks.[3]

After the final arbitration award, Grays moved to lift the stay. The district court denied that motion and entered judgment in favor of defendants based on its earlier summary judgment rulings and the preclusive effect of the arbitration result.[4]

## II.

Defendants argue that we have jurisdiction over only the district court's "August 20, 2021 Opinion and Order" because that is the only ruling Grays identified in her notice of appeal. Aplee. Resp. Br. at 1, 10–11. We disagree. Federal Rule of Appellate Procedure 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order, or part thereof being appealed." "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992). In her notice of appeal, Grays named the district court's "final judgment entered in this action on the 20th day of August 2021." R., Vol. IV at 415. "A notice of appeal that names the final judgment is sufficient to support

---

[3] The arbitrator left open the issue of whether Grays could recover noneconomic damages in the absence of any direct financial loss, and the record indicates the arbitrator issued a supplemental award presumably addressing that issue (it does not appear the supplemental award was presented to the district court). In the final arbitration award, the only award to Grays was $568 in costs.

[4] As we understand the district court's order, the arbitration award precluded the Rule 56(f)(3) issues. Grays does not argue otherwise.

review of all earlier orders that merge in the final judgment under the general rule

that appeal from a final judgment supports review of all earlier interlocutory orders."

*Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018)

(internal quotation marks omitted).  Our jurisdiction, therefore, is not limited to the

Opinion and Order filed on August 20, 2021, but extends to all of the district court's

rulings.

## III.

Grays raises four issues on appeal.  We address each in turn, liberally

construing her pro se filings but without acting as her advocate, *see Yang v.

Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).[5]

## A.

Grays first takes issue with the district court's failure to award her sanctions,

including attorney's fees and reasonable expenses, arising from (1) deposition

conduct and (2) Grays' motion to compel production of the ProMax data.  We review

issues related to discovery sanctions for abuse of discretion.  *See Klein-Becker USA,

LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013).

## 1.

The magistrate judge declined to impose sanctions for conduct during the

deposition of Auto Mart's corporate representative, finding that both parties' conduct

"could stand improvement"—Grays asked "overly broad questions" that "prompt[ed]

---

[5] To the extent Grays argues that the district court did not afford her pro se filings a sufficiently liberal construction, we reject it.

disputes between her and defense counsel," Suppl. R. at 256; and defense counsel had "at times unnecessarily escalate[d] the already-contentious nature of the deposition," *id.* at 257—but the conduct did not rise to a sanctionable level.

Over Grays' objections, the district court determined that the magistrate judge's ruling was not clearly erroneous, agreeing that "both sides bear a roughly equal share of blame for the sporadic and mostly brief digressions occurring during the deposition," and that Grays' argument that defense counsel "interposed unreasonable objections" lacked merit because "although objections were frequent, they were almost always briefly stated and did not unduly interfere with Ms. Grays' examination of the witness." R., Vol. IV at 343. The court further noted that most of the disputes concerned defendants' production of documents, and the record suggested that Grays could have, and perhaps should have, addressed the matter with defense counsel at some other time.

On appeal, Grays takes issue with the magistrate judge's characterization of her questioning as "overly broad," contending that she was only doing the best she could as a pro se litigant new to taking a deposition in a contentious environment and that, in any event, no procedural rule prohibits overly broad questions. She also argues that the magistrate judge did not address her allegations that defense counsel violated a local court rule allegedly prohibiting counsel for the deponent from objecting during the deposition except to determine whether to assert a privilege.

Grays fails to show the district court abused its discretion in determining that the magistrate judge's ruling was not clearly erroneous and that defense counsel's

conduct did not merit an award of sanctions. The deposition transcript supports the finding that Grays asked some overly broad questions and counsel asserted appropriate objections. And the district court correctly rejected Grays' argument that defense counsel was limited to privilege and work-product objections. That argument was based on D.C.COLO.LCivR 30.3(a)(2), which characterizes "interrupting examination by counsel except to determine whether to assert a privilege" as sanctionable deposition conduct. The district court explained that nothing in the Federal Rules of Civil Procedure prohibits a relevance objection at a deposition, and to the extent counsel's overbreadth objections could be construed as objections to the form of the question, Fed. R. Civ. P. 32(d)(3)(B) required counsel to raise them contemporaneously. And we see no abuse of discretion in the district court's determination that defense counsel had not "interposed *unreasonable* objections," R., Vol. IV at 343 (emphasis added). Under the local rule, sanctions are proper only upon a determination that "counsel *unreasonably* has interrupted, delayed, or prolonged a deposition, whether by excessive questioning, objecting, or other conduct." D.C.COLO.LCivR 30.3(d) (emphasis added).[6]

---

[6] To the extent Grays contests the district court's adoption of the magistrate judge's report and recommendation (ECF No. 146) to deny her second motion to compel compliance with discovery rules (ECF No. 128), she filed no objections to the recommendation despite having received the required warning about the time for doing so and the consequences of failing to do so. Under our firm waiver rule, that forfeits appellate review of factual and legal questions unless "the interests of justice require review." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005) (internal quotation marks omitted). Grays has not met that standard.

2.

Grays also takes issue with the district court's failure to award her attorney's fees and reasonable expenses related to her partial success on her motion to compel discovery of the ProMax data. She argues that pro se litigants are entitled to the same recoveries as attorneys because both have to follow the same procedural rules, and that the denial of attorney's fees and reasonable expenses violates equal protection.

As grounds for her motion, Grays relied on Fed. R. Civ. P. 37(a)(5)(A), which requires a court to award a successful movant "reasonable expenses incurred in making the motion [to compel], including attorney's fees." But as the district court correctly explained, "'Rule 37 does not empower the district court to award attorney fees to a *pro se* litigant.'" R., Vol. IV at 345 (quoting *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1376 (Fed. Cir. 2002)). And assuming constitutional equal protection guarantees apply here, there was no violation because hired counsel and a pro se litigant are not similarly situated. *See Pickholtz*, 284 F.3d at 1375 (explaining that Rule 37(a)(5)(A) requires that expenses were "incurred," and a pro se litigant, even if an attorney, does not incur attorney's fees); *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999) (observing that the Fifth Amendment guarantee of equal protection prohibits differential treatment of "similarly situated persons"). However, as noted, the district court did award Grays reasonable expenses related to her motion to compel, but it appears the court did not address whether Grays was entitled to any of the expenses she requested in the additional filing the court had

10

ordered. We therefore remand for the limited purpose of allowing the district court to address those expenses.

## B.

In her second issue Grays argues the district court erred in denying her motion for summary judgment on the FCRA claim. We reject this argument because Grays never asked for summary judgment on her FCRA claim. To the extent Grays means the district court erred in granting summary judgment to any of the defendants on the portions of the FCRA claim not subject to mandatory arbitration, the argument is insufficiently developed, and we therefore decline to consider it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that we generally decline to consider arguments an appellant inadequately presents in an opening brief). For the same reason, we also decline to consider what appears to be a contention that the district court erred in denying Grays summary judgment on her common law fraud claims related to Auto Mart's advertising of guaranteed credit approval. *See id.*

## C.

Grays' third issue, nominally framed as an equal protection violation, is that the district court failed to rule on the merits of her FCRA claim. This argument is frivolous. Contrary to Grays' contention that the district court denied both parties' motions for summary judgment on the FCRA claim, the district court *granted* summary judgment to defendants on those portions of Grays' FCRA claim related to her initial interest in the Outlander. *See* R., Vol. IV at 325–30. And as previously discussed, Grays did not seek summary judgment on the FCRA claim. Further,

11

Grays' argument that the district court should have awarded her damages on her FCRA claim because there was no "permissible purpose" for releasing her credit report, Aplt. Opening Br. at 27, fails to confront any of the reasons the district court gave for granting summary judgment to defendants on the parts of the FCRA claim not subject to mandatory arbitration.  Nor does she develop any argument that the district court erred in ruling that the parts of the FCRA claim subject to mandatory arbitration were barred because Grays failed to raise them in the arbitration.

D.

We discern two arguments in Grays' fourth issue—the district court erred (1) by using res judicata, also referred to as claim preclusion,[7] to bar claims against the individual defendants that were decided in Auto Mart's favor in the arbitration; and (2) by not applying preclusion principles to allow her to prevail on her negligent misrepresentation claim in district court.  Both arguments lack merit.

1.

"The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  Claim preclusion applies when there is "(1) a final judgment on the merits in

---

[7] We understand the district court's use of the term "res judicata" to mean "claim preclusion."  We note, however, that the Supreme Court has said that claim preclusion and issue preclusion (the latter also referred to as "collateral estoppel") "are collectively referred to as 'res judicata,'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

12

an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020) (brackets and internal quotation marks omitted). "[A] valid and final award by arbitration generally has the same effect under the rules of res judicata as a judgment of a court." *MACTEC, Inc.*, 427 F.3d at 831.

"We review *de novo* the district court's conclusions of law on the applicability of . . . claim preclusion." *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007). But "[t]he determination of identity between litigants for the purpose of establishing privity is a factual question, and the District Court should not be reversed unless its determination is clearly erroneous." *Lowell Staats Mining Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1276 (10th Cir. 1989) (internal quotation marks omitted).

Grays argues that because the individual defendants were not parties to the arbitration, they lacked privity with Auto Mart for purposes of res judicata. This wholly misperceives the concept of privity in the context of claim preclusion. Claim preclusion may be applied where the parties in both suits are identical *or* in privity with one another. "Privity requires . . . showing the parties in the two actions are really and substantially in interest the same." *Id.* at 1275. A company's employees are in privity with the company to the extent they were involved as agents in the issues in controversy in litigation. *See id.* at 1276. Here, the district court granted summary judgment to Grays on whether the individual defendants had acted as Auto Mart's agents during the transactions underlying the issues Grays raised in the case.

13

Thus, we see no error in the district court's application of claim preclusion to bar her assertion of any claims decided in favor of Auto Mart in the arbitration and any claims subject to mandatory arbitration that Grays did not assert in the arbitration.

Grays invokes two exceptions to claim preclusion, but neither aids her. The first exception is for claims a "court in the first action has expressly reserved the plaintiff's right to maintain in the second action." Restatement (Second) of Judgments § 26(1)(b). This exception is facially inapplicable because the arbitration is the "first action" for claim preclusion purposes, not the district court action, and nothing suggests the arbitrator reserved Grays' right to maintain any claims in her court action. Even if we might twist the language of this exception, the district court did not "reserve" for litigation outside of arbitration any claims against the individual defendants other than those that did not arise from or were not related to the sales contract. To the contrary, in its order compelling arbitration, the district court pointed out that agency and other principles might bear on whether Grays' claims against Auto Mart could subsume claims against the individual defendants. *See* R., Vol. I at 165–66. As it turned out, Grays successfully argued that the individual defendants had acted as Auto Mart's agents, and the court ultimately relied on that agency in applying claim preclusion to the same claims against the individual defendants that were decided in Auto Mart's favor in the arbitration.

The second exception to claim preclusion Grays invokes is applicable where a litigant is "unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action" because of various limitations on the court's

14

power.  Restatement (Second) of Judgments § 26(1)(c).  Grays, however, fails to identify any theory of the case she was unable to present in the arbitration because the individual defendants were not parties to the arbitration.

Grays argues more broadly that the district court erred in raising claim preclusion sua sponte because it is an affirmative defense and defendants never invoked it.  We see no error.  The Supreme Court has said that addressing preclusion sua sponte "might be appropriate in special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000).  One example of "special circumstances" is where "a court is on notice that it has previously decided the issue presented," which "is fully consistent with the policies underlying res judicata:  it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* (internal quotation marks omitted).  We think analogous circumstances exist here.  Although the district court did not itself previously decide the claims against Auto Mart, it sent those claims to arbitration and was provided with the arbitrator's decision setting out the resolution of those claims on the merits.  The court was, therefore, sufficiently familiar with the claims and their resolution to determine whether claim preclusion applied.  And Grays has not shown the district court erred in finding that the claims against Auto Mart resolved in the arbitration involved the same conduct by the same actors—the individual defendants—and the same transaction as the claims against the individual defendants.  *See* R., Vol. IV at 409 (finding that Grays had always asserted her claims "jointly . . . against all Defendants, without differentiation," and "the same

15

facts underlie" the claims as against both Auto Mart and the individual defendants).

Thus, it was appropriate for the district court to consider claim preclusion sua sponte.

Grays also complains it was unfair for the district court to force her to arbitrate her claims against only Auto Mart and then apply claim preclusion as to the individual defendants. We disagree. The arbitration provision required her to arbitrate any claim, dispute, or controversy arising from or relating to the sales contract if Auto Mart elected to proceed by arbitration. When Auto Mart elected to do so, the district court simply enforced the terms of the arbitration provision, and the court properly applied claim preclusion in favor of the individual defendants on claims that Grays asserted, or was required to assert, in the arbitration, including any part of the FCRA claim related to the Journey. The court did not, as Grays appears to think, apply claim preclusion to claims both unrelated to the Journey and not raised in the arbitration. We see nothing improper or unfair in the district court's application of claim preclusion.[8]

---

[8] Even where the elements of claim preclusion "are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a full and fair opportunity to litigate the claim in the prior action." *Johnson*, 950 F.3d at 693 (internal quotation marks omitted). Grays argues that the arbitration did not afford her such an opportunity as to the individual defendants and that the facts against the individual defendants had to be discussed. To the extent she means the very fact that the individual defendants were not parties to the arbitration deprived her of a full and fair opportunity to litigate her claims against them, we reject the notion. Crediting her argument would necessarily mean that claim preclusion could never apply to privies, which would contravene precedent. And Grays points us to no facts regarding the individual defendants that differ from the facts relevant to the claims against Auto Mart she raised in arbitration or that she was unable to present in the arbitration. We agree with the district court that the facts against all defendants were the same.

2.

Grays contends that because she prevailed on her negligent misrepresentation claim against Auto Mart in the arbitration, the district court should have applied collateral estoppel—also referred to as issue preclusion—and found the individual defendants liable on that claim.[9]  This argument, which appears to be an attempt to relitigate economic damages on the negligent misrepresentation claim, misses the mark because the result would be the same under application of either claim preclusion or issue preclusion.  Claim preclusion would not permit Grays to relitigate the claim against the individual defendants, including the determination that she was not entitled to economic damages.  Issue preclusion would bind the individual defendants as to liability, but it would also bind Grays to the arbitrator's determination that she was not entitled to economic damages.  We therefore see no error in the district court's non-application of issue preclusion.

---

[9] "[I]ssue preclusion . . . bars the re-litigation of an issue of law or fact after it is determined by a valid, final judgment." *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1193 (10th Cir. 2017).  Issue preclusion has four elements the party invoking it must establish:

> (1) the issue previously decided is identical to the present one; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the previous adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the previous adjudication.

*Id.*

IV.

The district court's judgment is affirmed, but we remand for the limited purpose of allowing the district court to address an award of expenses to Grays related to the filing of her motion to compel production of the ProMax data.

Entered for the Court

Joel M. Carson III
Circuit Judge