FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

     Plaintiff - Appellee,

v.

ASCENT CONSTRUCTION, INC., a Utah
corporation; BRADLEY L. KNOWLTON;
ASCENT CONSTRUCTION, INC.
EMPLOYEE STOCK OWNERSHIP
PLAN, an employee benefit plan,

     Defendants - Appellants.

No. 23-4114

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:23-CV-00047-TS-DAO)**

_____

Submitted on the briefs:[*]

Bruce M. Pritchett and Jonathan R. Rudd, of The Rudd Firm, P.C., Sandy, Utah, for
Defendants-Appellants.

Seema Nanda, Solicitor of Labor, Wayne R. Berry, Associate Solicitor for Plan Benefits
Security, Jeffrey M. Hahn, Counsel for Appellate and Special Litigation, Tina D. Davila,
Senior Trial Attorney, United States Department of Labor, Office of the Solicitor, Plan
Benefits Security Division, Washington, D.C., for Plaintiff-Appellee.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

_____

Before **PHILLIPS**, **KELLY**, and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Defendants Ascent Construction, Inc. (Ascent), Bradley Knowlton, and the Ascent Construction, Inc. Employee Stock Ownership Plan (the Plan) appeal a preliminary injunction removing Ascent and Knowlton from their respective positions as administrator and trustee of the Plan. Because we conclude that the district court's later order issuing a permanent injunction and entering final judgment in the underlying case dissolved the preliminary injunction at issue in this appeal, we dismiss the appeal as moot.

### Background

The Plan is an employee benefit plan created to provide retirement income to former employees of Ascent. As of 2020, the Plan contained Ascent stock and over $460,000 in cash. Ascent served as the Plan's administrator, and Knowlton (the president, CEO, and co-owner of Ascent) served as the Plan's trustee.

In 2022, the Department of Labor (DOL) investigated Ascent and Knowlton to determine whether they had breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001–1461. The DOL concluded that Knowlton had deposited over $311,000 of the Plan's cash into Ascent's checking accounts and then used it to pay Ascent's business expenses. The investigation also revealed that a former Ascent employee had requested—but never

received—a distribution from his retirement account, even though the Plan's custodian, AllianceBernstein, had issued a distribution check at Knowlton's request. The DOL also learned that Ascent was facing significant financial hardship: Knowlton admitted that Ascent had only two to three remaining employees, and former employees reported that Ascent was no longer operational. Moreover, Ascent and Knowlton were then being sued by an insurance company, which later obtained a $26 million dollar judgment against them. *See Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 20-cv-00089, 2023 WL 6318106, at *20 (D. Utah Sept. 28, 2023) (unpublished).

Although the investigation up to this point put Knowlton on notice about the earlier unlawful handling of the Plan's funds, in April 2023 he contacted AllianceBernstein and asked to withdraw the remainder of the Plan's cash, which Knowlton estimated to be around $130,000, and to close the account. AllianceBernstein relayed this request to the DOL, which in turn asked AllianceBernstein to freeze the account.

The DOL then filed this action, alleging that Knowlton and Ascent had violated ERISA's fiduciary-duty standard and prohibited-transaction rules. The DOL proceeded under two of ERISA's remedial provisions, 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(5); the former imposes personal liability on breaching fiduciaries and authorizes their removal, and the latter authorizes the Secretary of Labor to "enjoin any act or practice" that violates ERISA and to obtain "appropriate equitable relief" to redress such violations. In its complaint, the DOL requested a permanent

injunction removing Knowlton and Ascent from their respective positions as trustee and administrator of the Plan and appointing an independent fiduciary in their stead, as well as an order offsetting Knowlton's individual account balance against any amounts owed for his and Ascent's breach of their fiduciary duties to the Plan's participants.

Less than two weeks after filing suit, the DOL also sought a preliminary injunction removing Knowlton and Ascent as Plan fiduciaries and appointing an independent fiduciary to prevent further ERISA violations and dissipation of the Plan's assets. After a hearing, the district court granted the DOL's motion. Defendants then filed this interlocutory appeal.

While the appeal was pending, the case proceeded below—the DOL filed an amended complaint and discovery commenced.[1] In late January 2024, the DOL moved for discovery sanctions in the form of an order prohibiting defendants from raising certain affirmative defenses. Shortly thereafter, the district court ordered defendants to show cause for their failure to file a timely answer to the amended complaint and warned that further compliance failures could result in a default judgment against them.

In a later order, the district court concluded that defendants willfully failed to engage in the litigation process and comply with the court's orders, prejudicing the DOL and interfering with the judicial process. And as warned, it entered a default

---

[1] We take judicial notice of district-court filings below that were not included in the record on appeal. *Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020).

judgment against defendants under Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(vi) in the amount of $288,873.64. It also entered a permanent injunction that superseded the preliminary injunction at issue in this appeal, permanently barring Knowlton and Ascent from serving, respectively, as trustee and administrator of the Plan and authorizing the appointed fiduciary to terminate the Plan and commence a claim-submission process. The DOL then moved to dismiss this appeal as moot.[2]

**Analysis**

Before addressing the merits of this interlocutory appeal, we must first ensure that we have jurisdiction over it. "We have statutory jurisdiction to review a district court's interlocutory order granting a preliminary injunction." *Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th Cir. 2015); *see also* 28 U.S.C. § 1292(a)(1). However, we can "lose our jurisdiction if an interlocutory appeal no longer presents a live case or controversy. In those circumstances, an appeal is moot, and we are without subject[-]matter jurisdiction to reach the merits of the appeal." *Fleming*, 785 F.3d at 444.

We review mootness de novo. *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1181 (10th Cir. 2012). "In considering mootness, we ask 'whether granting a *present* determination of the issues offered will have some effect in the real world.'" *Fleming*, 785 F.3d at 444–45 (quoting *Rio Grande Silvery Minnow v.*

---

[2] We dismissed defendants' separate appeal of the default judgment and permanent injunction for lack of prosecution. *See Su v. Ascent Constr., Inc.*, No. 24-4025 (10th Cir. Apr. 16, 2024).

*Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)). As applied to these circumstances, "an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction[] because the former merges into the latter." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314 (1999); *see also Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1115–16 (10th Cir. 2010) (explaining that preliminary injunctions "usually merge into any subsequent final order granting a permanent injunction"). This is because preliminary injunctions typically "seek[] to enjoin, pending the outcome of the litigation, action that [the plaintiff] claims is unlawful." *Grupo Mexicano*, 527 U.S. at 314. And if the eventual outcome is a permanent injunction enjoining the unlawful conduct, then the permanent injunction "establishes that the defendant should not have been engaging in the conduct that was enjoined." *Id.* at 315 (emphasis omitted). "Hence, it is reasonable to regard the preliminary injunction as merging into the final one: [i]f the latter is valid, the former is, if not procedurally correct, at least harmless." *Id.*

But defendants here seek to avoid application of the usual merger rule by invoking the narrow exception carved out by the Supreme Court in *Grupo Mexicano*. There, a group of bondholders sued an insolvent Mexican holding company for breach of contract because it missed interest payments. 527 U.S. at 310–12. The bondholders successfully obtained a preliminary injunction that prohibited the holding company from disposing of its most valuable asset even though the bondholders had no lien or equitable interest in that asset. *Id.* at 312–13. And while the holding company's interlocutory appeal was pending, the district court granted

6

summary judgment on the bondholders' breach-of-contract claim and issued a permanent injunction prohibiting the holding company from transferring the asset until they paid the bondholders over $82 million in damages. *Id.* at 313.

Despite the permanent injunction, however, the Supreme Court determined that the holding company's interlocutory appeal was not moot because it challenged the preliminary injunction on the basis that the district court lacked the authority to restrain the use of assets prior to judgment—an argument entirely independent from the bondholders' breach-of-contract claim on its merits. *Id.* at 317. In this situation, "the substantive validity of the final injunction d[id] not establish the substantive validity of the preliminary one." *Id.* at 315 (emphasis omitted). This was particularly the case because the preliminary injunction "was issued not to enjoin *unlawful* conduct, but rather to *render* unlawful conduct that would otherwise be permissible, in order to protect the anticipated judgment of the court." *Id.*

We agree with the DOL that *Grupo Mexicano* does not preserve our subject-matter jurisdiction over this appeal. Unlike the preliminary injunction in *Grupo Mexicano*, which sought to preserve the holding company's assets in case of final judgment against it on the breach-of-contract claim, the preliminary injunction here sought "to enjoin, pending the outcome of the litigation, action that [the DOL] claims is unlawful." *Id.* at 314. Specifically, the DOL sought to preliminarily enjoin Knowlton and Ascent from violating ERISA's prohibitions on self-dealing and breaches of fiduciary duty. And that is the same goal the DOL sought (and achieved) in obtaining a permanent injunction. In other words, this case is not like *Grupo*

7

*Mexicano* because the aim of the underlying litigation—preventing the defendants from violating ERISA—aligns with the effect of both the preliminary and permanent injunctions.

Resisting this conclusion, defendants suggest that the *Grupo Mexicano* exception applies here because both cases involved so-called "mandatory" preliminary injunctions. We reject this argument because it mischaracterizes *Grupo Mexicano*. The Supreme Court's reasoning there turned *not* on the distinction between mandatory and prohibitory injunctions, but rather on the distinction between injunctions prohibiting allegedly unlawful conduct (as here) and injunctions prohibiting otherwise lawful conduct (as in *Grupo Mexicano*). Indeed, the portions of *Grupo Mexicano* that defendants cite are not about the mandatory nature of the injunction, let alone mootness; they are a discussion of why a district court lacks inherent authority to enjoin a defendant's use of his assets in the absence of a judgment.[3] *See* 527 U.S. at 328–33.

The defendants also argue that their appeal is not moot because preliminary injunctions only merge with permanent injunctions when the district court makes a final adjudication on the merits of a claim, rather than when a district court enters a

---

[3] Defendants relatedly suggest that their interlocutory appeal is not moot because they have a potential right to pursue a claim against the DOL for a wrongful injunction. In support, they refer to a statement in *Grupo Mexicano* that the holding company's interlocutory appeal was not moot because of its "potential cause of action against the injunction bond." 527 U.S. at 314. But there is no injunction bond in this case; unlike in *Grupo Mexicano*, the DOL is exempt from posting an injunction bond. *See* Fed. R. Civ. P. 65(c).

default judgment. For support, defendants rely on a recent unpublished case in which we held that an interlocutory appeal from a preliminary injunction was moot because the plaintiff had obtained a permanent injunction; we noted in passing that the permanent injunction required the plaintiff "to show 'actual success on the merits.'" *Sonic Industries, LLC v. Simple Tie Ventures, LP*, No. 20-6120, 2021 WL 3438518, at *2 (10th Cir. Aug. 5, 2021) (unpublished) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)). Seizing on that language, defendants suggest that merely obtaining a default judgment is not the same as showing success on the merits.

But even though "[t]he preferred disposition of any case is upon its merits and not by default judgment" we are unpersuaded that this distinction is meaningful in this context. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). A preliminary injunction dissolves automatically with the entry of final judgment. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) ("With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on any[]one." (quoting *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977))). And we see no reason why this rule should not apply when the final judgment is a default judgment, which "is simply 'a "final disposition of the case and an appealable order" that has the same effect as a judgment rendered after a trial on the merits.'" *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 363 n.2 (1st Cir. 2024) (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004)); *see also* 10A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2684 (4th ed. June 2024 update) (same). Indeed, the Ninth Circuit has held that a district court lacked authority to modify a preliminary injunction after a final default judgment had been entered because the preliminary injunction automatically dissolved upon entry of final, albeit default, judgment. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Thus, we conclude that it is immaterial for mootness purposes whether a final judgment has been issued on the merits or by way of default judgment: both have the effect of dissolving the preliminary injunction. Accordingly, this appeal is moot because granting the defendants' requested relief—vacatur of the preliminary injunction—would have no "effect in the real world." *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)).

### Conclusion

Because the defendants' interlocutory appeal from the district court's grant of a preliminary injunction is moot, we dismiss this appeal for lack of subject-matter jurisdiction.