**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LORI CHAVEZ-DEREMER[*], Secretary of
Labor, United States Department of Labor,

     Plaintiff - Appellee,

v.

ASCENT CONSTRUCTION, INC., a Utah
corporation; BRADLEY L. KNOWLTON,
an individual; ASCENT
CONSTRUCTION, INC. EMPLOYEE
STOCK OWNERSHIP PLAN, an
employee benefit plan,

     Defendants - Appellants,

and

ASCENT CONSTRUCTION INC. 401K
PLAN, an employee benefit plan,

     Defendant.

No. 24-4072
(D.C. No. 1:23-CV-00047-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[**]

_____

[*] On March 11, 2025, Lori Chavez-DeReMer became the Secretary of Labor. Consequently, her name has been substituted as Plaintiff-Appellee, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Before **BACHARACH**, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

In this civil action brought by the United States Department of Labor (DOL) to enforce the Employee Retirement Income Security Act of 1974 (ERISA), Ascent Construction, Inc. (Ascent), Bradley L. Knowlton (Knowlton), and the Ascent Construction, Inc. Employee Stock Ownership Plan (the Plan) (together, defendants), appeal from the district court's entry of default judgment and a permanent injunction.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. To the extent the defendants challenge the district court's now-dissolved preliminary injunction, we dismiss their appeal for lack of jurisdiction.

## I.    Background

In an earlier, interlocutory appeal in this case, we summarized the relevant factual and procedural background, which culminated in the entry of the default judgment and permanent injunction from which the defendants now appeal:

> The Plan is an employee benefit plan created to provide retirement income to former employees of Ascent. As of 2020, the Plan contained Ascent stock and over $460,000 in cash. Ascent served as the Plan's administrator, and Knowlton (the president, CEO, and co-owner of Ascent) served as the Plan's trustee.
>
> In 2022, the Department of Labor (DOL) investigated Ascent and Knowlton to determine whether they had breached their fiduciary duties under [ERISA]. The DOL concluded that ***Knowlton had deposited over $311,000 of the Plan's cash into Ascent's checking accounts and then used it to pay Ascent's business expenses.***[1] The investigation also

---

[1] As alleged by DOL's complaint, Knowlton also used some of the funds taken from the Plan "to pay himself." Aplt. App. at 53.

revealed that a former Ascent employee had requested—but never received—a distribution from his retirement account, even though the Plan's custodian, AllianceBernstein, had issued a distribution check at Knowlton's request. The DOL also learned that Ascent was facing significant financial hardship: Knowlton admitted that Ascent had only two to three remaining employees, and former employees reported that Ascent was no longer operational. Moreover, Ascent and Knowlton were then being sued by an insurance company [Zurich American Insurance Co. (Zurich)], which later obtained a $26 million dollar judgment against them. *See Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 20-cv-00089, 2023 WL 6318106, at *20 (D. Utah Sept. 28, 2023) (unpublished).[2]

Although the investigation up to this point put Knowlton on notice about the earlier unlawful handling of the Plan's funds, ***in April 2023 [Knowlton]*** contacted AllianceBernstein and ***asked to withdraw the remainder of the Plan's cash***, which Knowlton estimated to be around $130,000, and to close the account. AllianceBernstein relayed this request to the DOL, which in turn asked AllianceBernstein to freeze the account.

The DOL then filed this action, alleging that Knowlton and Ascent had violated ERISA's fiduciary-duty standard and prohibited-transaction rules. The DOL proceeded under two of ERISA's remedial provisions, 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(5); the former imposes personal liability on breaching fiduciaries and authorizes their removal, and the latter authorizes the Secretary of Labor to "enjoin any act or practice" that violates ERISA and to obtain "appropriate equitable relief" to redress such violations. In its complaint, the ***DOL requested a permanent injunction removing Knowlton and Ascent from their respective positions as trustee and administrator of the Plan*** and appointing an independent fiduciary in their stead, as well as an order offsetting Knowlton's individual account balance against any amounts owed for his and Ascent's breach of their fiduciary duties to the Plan's participants.

Less than two weeks after filing suit, the DOL also sought a preliminary injunction removing Knowlton and Ascent as Plan fiduciaries and appointing an independent fiduciary to prevent further ERISA violations

---

[2] The district court entered judgment in Zurich's favor in September 2023, but further district court proceedings have continued since then. *See Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, Nos. 23-4134, 23-4144, 2023 WL 11156341, at *2 (10th Cir. Dec. 26, 2023) (unpublished) (dismissing appeal for lack of jurisdiction because "[t]he district court's order granting summary judgment in favor of Zurich and its subsequent judgment did not end [the] litigation on the merits").

and dissipation of the Plan's assets.  After a hearing, the district court granted the DOL's motion.  Defendants then filed [an] interlocutory appeal.

While the appeal was pending, the case proceeded below—the DOL filed an amended complaint[3] and discovery commenced.  In late January 2024, the DOL moved for discovery sanctions . . . .  Shortly thereafter, ***the district court ordered defendants to show cause for their failure to file a timely answer*** to the amended complaint and warned that further compliance failures could result in a default judgment against them.

In a later order, ***the district court concluded that defendants willfully failed to engage in the litigation process and comply with the court's orders, prejudicing the DOL and interfering with the judicial process.***  And as warned, ***it entered a default judgment against defendants*** under Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(vi) in the amount of $288,873.64.  ***It also entered a permanent injunction*** that superseded the preliminary injunction . . . ***permanently barring Knowlton and Ascent from serving, respectively, as trustee and administrator of the Plan and authorizing the appointed fiduciary to terminate the Plan and commence a claim-submission process.***

*Su v. Ascent Constr., Inc.*, 104 F.4th 1240, 1242–44 (10th Cir. 2024) (emphasis added) (footnote omitted).

Because the permanent injunction superseded the preliminary injunction, we dismissed the appeal from the preliminary injunction as moot.  *See id.* at 1246.[4]

---

[3] The amended complaint added a separate ERISA-governed retirement plan, the Ascent Construction, Inc. 401(k) Plan (the 401(k) Plan), as a named defendant and alleged Knowlton had prevented at least one former employee from transferring funds from the 401(k) Plan to another retirement account.

[4] Knowlton and Ascent also appealed immediately after the district court entered the order indicating it would enter default judgment.  Because that order also indicated there would be further proceedings in the district court, we directed defendants to either address whether we had jurisdiction or dismiss the appeal.  They filed nothing in response to our order and we dismissed the appeal for lack of prosecution.  *See Su v. Ascent Constr., Inc.*, No. 24-4025 (10th Cir. Apr. 16, 2024).

Defendants now appeal from the district court's entry of default judgment and the permanent injunction.[5]

## II.    Discussion

### A. Entry of Default Judgment as a Sanction

#### 1.  Legal Standards

District courts are authorized by Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(vi) to enter default judgment as a sanction for disobeying scheduling and discovery orders.  "Default judgment is generally considered a harsh sanction that should be used only when a party's noncompliance is due to willfulness, bad faith, or any fault of the disobedient party and not when a party is unable to comply with a discovery order."  *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (internal quotation marks and brackets omitted).  In this context, "[w]e have defined a willful failure as any intentional failure as distinguished from involuntary noncompliance."  *Id.* (internal quotation marks omitted).  However, "[n]o wrongful intent need be shown."  *Id.* (internal quotation marks omitted).

"Decisions to enter judgment by default are committed to the district court's sound discretion . . . ."  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)); *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 857 (10th Cir. 2018) ("We review the imposition of sanctions

---

[5] The default judgment and permanent injunction were entered against the 401(k) Plan along with the other defendants, but the 401(k) Plan has not appealed.

for abuse of discretion."). We therefore "will not disturb the court's decision without a clear showing that the decision was based on a clearly erroneous factual finding or that it manifests a clear error of judgment." *Olcott*, 327 F.3d at 1124.

Before entering default judgment, district courts "should ordinarily evaluate" the five "*Ehrenhaus* factors," which include:

(1) the degree of actual prejudice to the other party;

(2) the amount of interference with the judicial process;

(3) the culpability of the litigant;

(4) whether the court warned the party in advance that [termination] of the action would be a likely sanction for noncompliance; and

(5) the efficacy of lesser sanctions.

*The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (internal quotation marks, brackets, and ellipsis omitted) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

However, the *Ehrenhaus* factors are "not exhaustive, nor . . . necessarily of equal weight," *id.* (internal quotation marks omitted), and they "do not represent a rigid test," *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (internal quotation marks omitted). Rather, they provide "a non-exclusive list of sometimes-helpful criteria or guide posts the district court may wish to consider in the exercise of what must always remain a discretionary function." *Id.* (internal quotation marks omitted). Further, a district court need not "afford [the *Ehrenhaus* factors] an extended discussion," *id.* at 1324, and we will affirm a district court's entry of

6

default judgment as a sanction "so long as our independent review of the record confirms that the district court didn't abuse its discretion," *id.* at 1323.

### 2. The District Court Did Not Abuse its Discretion

#### a. *Defendants' Conduct Leading to Entry of Default Judgment*

DOL filed the amended complaint on October 2, 2023, and on November 20, 2023, a motion to compel defendants to respond to interrogatories DOL had served on August 21, 2023. Defendants did not file a response to DOL's motion to compel and the court granted the motion, ordering defendants to respond to the interrogatories by January 3, 2024. A few days later, in a separate order, the court directed the parties to address why defendants had not answered the amended complaint. Defendants then agreed to file an answer by January 29, 2024, and the district court entered an order adopting that date as the deadline.

Defendants did not obey the order to respond to DOL's interrogatories by January 3, 2024, and a few weeks later, DOL sought sanctions. Defendants also did not obey the order requiring them to answer the amended complaint by January 29, 2024, and they did not seek an extension of that deadline. This led the district court to enter an order to show cause, on February 5, 2024, which observed defendants had not answered the amended complaint and directed them within fourteen days "to show cause why the Court should not impose sanctions against them, up to and including the entry of default judgment." Aplt. App. at 9. The order "warned that failure to comply . . . could result in terminating sanctions." *Id.*

7

Defendants filed a response to the court's show-cause order on February 21, 2024, accompanied by an answer to the amended complaint.  The response explained that defendants had missed the fourteen-day deadline to respond to the order to show cause because of electronic filing problems.  But it offered no explanation for having failed to answer the amended complaint by January 29, 2024.

b. *District Court Ruling*

On February 28, 2024, the court entered an order concluding default judgment was appropriate.  It found all five *Ehrenhaus* factors weighed in favor of entering default judgment, as follows:

1. As to the prejudice to DOL, that defendants' "failure to promptly engage in litigation and comply with the Court's orders has interfered with [DOL's] ability to obtain a resolution."  *Id.* at 87.

2. As to interference with the judicial process, that defendants' failure to timely answer the amended complaint or to explain that failure, "against the backdrop of. . . their failure to respond to [DOL's] interrogatories," even after being ordered to do so, showed defendants' actions had "interfered with the judicial process by continuing to disregard the Court's orders and by failing to participate in the litigation."  *Id.* at 87–88.

3. That defendants' "culpability [was] evident in [their] failure to respond to the Court despite being warned" of the potential to be sanctioned, and that defendants' failures to timely file an amended answer or to "provide any explanation" for not doing so "were intentional" and met the standard of being "a willful failure."  *Id.* at 88 (internal quotation marks omitted).

4. That defendants had been "warned . . . their failure to respond to the Order to Show Cause could result in terminating sanctions."  *Id.* at 88.

5. "[T]hat lesser sanctions would be inadequate," given that defendants had "continually refused to participate in [the] litigation and comply with the Court's orders."  *Id.*

8

c. *Discussion*

We see no abuse of discretion in the district court's evaluation of the *Ehrenhaus* factors or its entry of default judgment. Defendants challenge the district court's evaluation of only two of the *Ehrenhaus* factors, arguing the court (1) gave an insufficient explanation for finding their conduct willful and lacked a factual basis for that finding and (2) did not "genuinely" consider lesser sanctions. Aplt. Opening Br. at 10. Their arguments are unpersuasive.

First, the district court did not abuse its discretion in finding defendants' disobedience of court orders was willful. The defendants do not, and cannot, dispute that they disobeyed the court's orders (1) compelling them to respond to DOL's interrogatories and (2) requiring them to answer the amended complaint by January 29, 2024. Further, when the district court ordered them to explain why they should not be sanctioned for failing to answer the amended complaint, they gave no explanation. Indeed, they have never, including in this appeal, offered any reason they were "unable to comply" with the January 29, 2024, deadline or that their noncompliance was "involuntary." *Klein-Becker*, 711 F.3d at 1159.

Second, we see no abuse of discretion in the district court's finding that lesser sanctions would be ineffective, given that defendants had "continually refused to participate in [the] litigation." Aplt. App. at 88. On appeal, they contend they "had clearly been litigating the case." Aplt. Opening Br. at 10. But their claim is not self-evident, and in support they only vaguely reference activity in the district court's docket, comprising DOL's efforts to obtain discovery and its related request for

9

sanctions.  We give "special discretion in this arena" to the district court, because it holds "a superior position . . . for deciding what sanction best fits the discovery 'crime.'"  *Lee*, 638 F.3d at 1320.  Given that deference, nothing persuades us to set aside the district court's finding that defendants had refused to participate in the litigation to a degree that showed lesser sanctions would be ineffective.

In sum, on independent review, we conclude the district court acted well within its discretion to enter default judgment based on defendants' failures (1) to obey the order compelling a response to DOL's interrogatories; (2) to obey the order requiring them to answer the amended complaint by January 29, 2024; and (3) to provide an explanation, as ordered, for why their failure to timely answer the amended complaint should not be sanctioned.  *See Lee*, 638 F.3d at 1320–21 ("[T]he district court's considerable discretion in this arena easily embraces the right to . . . enter default judgment . . . when a litigant has disobeyed two orders compelling production of the same discovery materials . . . ."); *Auto-Owners*, 886 F.3d at 860 (to show abuse of the judicial process sufficient to support dismissal, "it is enough to say the sanctioned party repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party" (brackets omitted) (quoting *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993)).

## B.  Entry of Permanent Injunction

We also affirm the district court's entry of a permanent injunction.  Our review is for abuse of discretion.  *See Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir.

10

2014).  The entry of default judgment means defendants forfeited their ability to contest the facts alleged in DOL's complaint.  *See EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 157 (10th Cir. 2022).  In fact, defendants do not dispute either that they took the actions alleged by DOL or that those actions violated ERISA.  They also do not challenge the scope or terms of the permanent injunction, which we view as "establish[ing] that [Knowlton and Ascent] should not have been engaging in the conduct that was enjoined," *Su*, 104 F.4th at 1244 (quoting *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 315 (1999)).

Rather than squarely challenge the permanent injunction, defendants purport to appeal from the preliminary injunction.  But we already held that their challenge to the preliminary injunction is moot.  *See id.* ("[A]n appeal from . . . a preliminary injunction becomes moot when the trial court enters a permanent injunction[] because the former merges into the latter." (quoting *Grupo Mexicano*, 527 U.S. at 314)).

Nevertheless, defendants' brief in this appeal is almost entirely directed to the preliminary injunction; in fact, most of their argument is a verbatim reprint from the brief they filed in the district court opposing the preliminary injunction.  *Compare* Aplt. Opening Br. at 11–25 *with* Opp. to Mot. for Preliminary Injunction (Corrected) (ECF No. 27) at 5–15, *Su v. Ascent Construction, Inc.*, No. 1:23-cv-00047-TS-DAO (D. Utah May 31, 2023).[6]  As a result, almost all of defendants' arguments are

---

[6] "We take judicial notice of district-court filings below that were not included in the record on appeal." *Su*, 104 F.4th at 1243 n.1.

framed in terms that are not relevant in the present posture.[7]  To the extent defendants persist in challenging the preliminary injunction to the exclusion of arguing against the permanent injunction, they have forfeited their opportunity to raise more relevant arguments.  *See Kitchen*, 755 F.3d at 1208 ("The omission of an issue in an opening brief generally forfeits appellate consideration of that issue." (brackets omitted) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007))).

We do, however, exercise our discretion to address two arguments potentially relevant to the permanent injunction.  *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (the standard required to obtain a permanent injunction "is remarkably similar to the standard for a preliminary injunction").  Both relate to the district court's evaluation of irreparable harm, which is a showing required for both preliminary and permanent injunctions.  *See id.*

The district court recognized that while monetary harm that can be compensated after the fact is ordinarily not considered irreparable, some "courts have concluded irreparable harm exists where the monies may not be collectible in the future."  Aplt. App. at 30.  In the circumstances of this case—including the unlawful removal of Plan funds by Knowlton and Ascent; the defendants' failure to timely pay a requested distribution to at least one Plan participant; and Ascent's financial

---

[7] *See, e.g.*, Aplt. Opening Br. at 16 (arguing a preliminary injunction would improperly "afford plaintiff all the relief it might get at trial" (capitalization altered)); *id.* at 23 (arguing "the sense of urgency that ordinarily accompanies a motion for preliminary relief is not present"); *id.* at 25 (arguing the "motion [for a preliminary injunction] should be denied").

distress—the district court found it "likely that the Plan funds will not be recoverable should Knowlton be allowed to continue as fiduciary," and that an injunction was therefore warranted to prevent irreparable harm. *Id.* at 31.[8]

We see no abuse of discretion in the district court's finding of irreparable harm. Rather than redressing past financial losses, which are presumably addressed by the monetary award in the entry of default judgment, the permanent injunction serves to prevent additional future misappropriations of Plan assets. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018) ("[A] . . . monetary award for past conduct does not preclude a court from entering a permanent injunction against similar wrongful conduct that is likely to occur in the future."). By removing Knowlton and Ascent as Plan fiduciaries, the injunction reasonably seeks to prevent additional ERISA violations that would likely make it impossible for the Plan to timely pay claims or distributions to its beneficiaries. *See generally Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987) ("[T]he purpose of ERISA . . . is to insure that the assets of a fund will be there *when the beneficiaries need them*." (emphasis added)).

In the circumstances of this case, the injunction is not inconsistent with the general principle that a harm is only considered irreparable if there is "a significant risk" that it "cannot be compensated after the fact." *Husky Ventures*, 911 F.3d at

---

[8] The district court made these findings when entering the preliminary injunction. It later explained that the permanent injunction superseded the preliminary injunction and was entered based upon the same findings and reasoning. *See* Aplt. App. at 171.

1011 (internal quotation marks omitted). The record supports the district court's conclusion that any additional funds removed from the Plan by Knowlton and Ascent would likely be unrecoverable and therefore could not be compensated in the future. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("Difficulty in collecting a damage judgment may support a claim of irreparable injury.").

Moreover, the relevant harm is not monetary loss to DOL, which might more simply be reduced to a future judgment, but the likelihood that Knowlton and Ascent would remove even more assets from the Plan, further violating ERISA and preventing the Plan from meeting its obligations to Plan participants. In this context, we see no abuse of discretion in entry of injunctive relief that removes Knowlton and Ascent as Plan fiduciaries, as is authorized by ERISA and consistent with its purposes. *See Ramos v. Banner Health*, 1 F.4th 769, 778, 784 (10th Cir. 2021) (stating that ERISA "provides for broad and flexible equitable remedies in cases involving breaches of fiduciary duty," and "[b]ecause ERISA imposes a high standard on fiduciaries, serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction" (internal quotation marks omitted)); *see also Peters v. Aetna Inc.*, 2 F.4th 199, 217 (4th Cir. 2021) ("Trust law recognizes that an injunction may be proper if the beneficiary can show that an act contemplated by the trustee . . . would amount to a breach of trust or otherwise prejudice the beneficiary. On this basis, ERISA authorizes the issuance of injunctions in order to

grant appropriate equitable relief . . . ." (citation and internal quotation marks omitted)).

Defendants object to the district court's consideration of Zurich's litigation against them. They argue that because DOL is a government agency, it is "certain of collecting its . . . judgment before Zurich," so that the district court erred in concluding Zurich's litigation would make it difficult to recover a future monetary award. Aplt. Opening Br. at 8–9. They also argue that Zurich never obtained a judgment against the Plan, only against Knowlton and Ascent, and that the post-judgment proceedings in Zurich's litigation make the judgment against them uncertain. These arguments make no difference to our analysis. Initially, defendants cite no authority to support their claim that DOL is sure to recover before Zurich. Moreover, their arguments do not change the district court's overarching conclusion—which they do not dispute—that Ascent's and Knowlton's financial condition make it unlikely any additional monies Knowlton and Ascent might remove from the Plan could ever be restored.

Beyond that, defendants argue generally that because the claimed harms are monetary in nature, injunctive relief is improper. But their arguments, directed to the since-dissolved preliminary injunction, do not account for facts and procedural context that support the permanent injunction. The default judgment adjudicated the ERISA claims in DOL's favor, establishing among other allegations, that Knowlton sought to empty and close the Plan's investment account even after he was on notice that his conduct was unlawful. Given the likelihood of additional ERISA violations

15

if Knowlton and Ascent retained control of the Plan, the district court did not abuse its discretion in concluding a permanent injunction was needed to avoid irreparable harm to the Plan (and thereby its beneficiaries). *See Ramos*, 1 F.4th at 777 ("If a court finds a breach of fiduciary duties, it has wide leeway to fashion remedies to make [ERISA] plan participants whole."); *Husky Ventures*, 911 F.3d at 1012 (noting that "[d]amages flowing from anticipated future injury to one's livelihood . . . are especially difficult to calculate," and can therefore be considered irreparable).

In sum, considering the ERISA violations adjudicated against defendants by default judgment, the risk of additional future harm, defendants' financial distress, and the likelihood that any future losses could not be recovered, the district court did not abuse its discretion in concluding a permanent injunction was needed to avoid irreparable harm.

### III.    Conclusion

For the reasons above, we affirm the district court's entry of default judgment and a permanent injunction. To the extent defendants appeal from the district court's entry of the since-dissolved preliminary injunction, their appeal is dismissed for lack of jurisdiction.

Entered for the Court

Per Curiam

16