**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CODY REID LUNSFORD,

Petitioner - Appellant,

v.

MARGARET GREEN, Warden,

Respondent - Appellee.

No. 26-6037
(D.C. No. 5:25-CV-00276-D)
(W.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY*

_____

Before **HARTZ**, **MATHESON**, and **ROSSMAN**, Circuit Judges.

_____

Cody Reid Lunsford, an Oklahoma state prisoner, seeks a certificate of

appealability ("COA") to challenge the district court's denial of his 28 U.S.C. § 2254

application for a writ of habeas corpus as time-barred. *See* 28 U.S.C. § 2253(c)(1)(A)

(requiring a COA to appeal "the final order in a habeas corpus proceeding in which the

detention complained of arises out of process issued by a State court"). Exercising

jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny his request and dismiss this

matter.

---

* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

### A. *Procedural History*

#### 1. State Proceedings

Mr. Lunsford was charged with child abuse by injury in violation of Okla. Stat. tit. 21, § 843.5(A).  The prosecution presented the following evidence.

On February 27, 2015, Mr. Lunsford brought M.V.,[1] a four-month-old infant, to St. Anthony's Emergency Room in Shawnee, Oklahoma.  M.V. presented with hypothermia, facial and ear bruising, and petechiae.  A CT scan revealed bilateral retinal hemorrhaging, retinoschisis, a subdural hematoma, and a possible skull fracture.  M.V. was transferred to Oklahoma University Children's Hospital ("OU"), where a child abuse specialist diagnosed her with an abusive head trauma.

Mr. Lunsford was alone with M.V. when she sustained these injuries.  He told investigators M.V. fell off the bed, but several witnesses testified his explanation was inconsistent with M.V.'s injuries.[2]

A jury in the Pottawatomie County District Court convicted Mr. Lunsford.  The Oklahoma Court of Criminal Appeal ("OCCA") affirmed the conviction on direct appeal.

Mr. Lunsford sought post-conviction relief in state court.  He introduced responses to written deposition questions from Dr. Lori Crow, who treated M.V. a week before the

---

[1] We refer to the minor victim in this case as M.V. to maintain anonymity.

[2] We discuss additional trial evidence below in addressing Mr. Lunsford's actual innocence claim.

incident; Dr. Kathryn Cook, one of M.V's treating physicians at OU; and Dr. James Glenn, M.V.'s radiologist at St. Anthony. He also introduced the report and affidavit of Dr. Harvey Jenkins, a former physician who did not treat M.V. The state district court denied post-conviction relief, and the OCCA affirmed.[3]

## 2. Federal Proceedings

In May 2025, Mr. Lunsford applied for a writ of habeas corpus under § 2254. The respondent moved to dismiss the application as time-barred under 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations for filing § 2254 applications.

Mr. Lunsford asserted that his application was timely. Alternatively, he invoked the actual innocence exception to the time bar, arguing the new evidence from his state post-conviction proceedings showed that M.V. "did not suffer a skull fracture" and that her "condition and symptoms were caused by meningitis, sepsis, or clotting disorders, which were not properly diagnosed or treated." App. at 10, 18.

A magistrate judge issued a report recommending that district court dismiss Mr. Lunsford's application. The district court adopted the magistrate judge's recommendation and concluded that Mr. Lunsford's application was untimely and failed to satisfy the actual innocence exception. On actual innocence, the court accepted the

---

[3] Mr. Lunsford did not include the records from his state proceedings that were filed in federal district court in his appendix on appeal. As a general matter we may take judicial notice of the district court filings. *See Su v. Ascent Constr., Inc.*, 104 F.4th 1240, 1243 n.1 (10th Cir. 2024) ("We take judicial notice of district-court filings below that were not included in the record on appeal."); *see also* Fed. R. App. P. 10(a) (The record on appeal includes "the original papers and exhibits filed in the district court.").

magistrate judge's conclusion that Dr. Crow's and Dr. Cook's deposition responses and Dr. Jenkins's report constituted "new evidence," *id.* at 10 n.3, but it determined this evidence "was insufficient to establish a 'credible' claim of actual innocence," *id.* at 14-15.  It therefore denied Mr. Lunsford's application.

## II.  DISCUSSION

### A.  *Legal Background*

### 1.  COA Requirement

We must grant a COA to consider Mr. Lunsford's appeal from the district court's denial of his § 2254 application.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Where, as here, the district court dismissed the application on procedural grounds, we will grant a COA only if the applicant can demonstrate both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

### 2.  Actual Innocence Exception to Statute of Limitations

A § 2254 applicant may overcome the one-year statute of limitations by making "a credible showing of actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 392-94 (2013).  The applicant must support his claim with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  He

must "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

As the Supreme Court explained, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). This standard is "demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

## B. *Analysis*

Mr. Lunsford does not contest in this court that he failed to meet the one-year statute of limitations. Instead, he contends that reasonable jurists could debate the district court's actual innocence determination. We disagree.[4]

### 1. Evidence from the State Post-Conviction Proceedings

Mr. Lunsford relies on the following evidence from his state post-conviction proceedings.

---

[4] We assume without deciding that Mr. Lunsford's evidence from the state post-conviction proceeding is "new" for purposes of the actual innocence claim he presents here.

### a. Dr. Crow

In her deposition responses, Dr. Crow stated that she treated M.V. approximately one week before the incident occurred. App. at 104; Br. Supp. Mot. Dismiss Ex. 12 at 2, Dkt. No. 12-12. She diagnosed her with acute otitis media (ear infection), and treated it with amoxicillin. App. at 104; Br. Supp. Mot. Dismiss Ex. 12 at 3, Dkt. No. 12-12. Dr. Crow did not conduct a blood test to identify which virus or bacteria caused M.V.'s ear infection. App. at 104; Br. Supp. Mot. Dismiss Ex. 12 at 3, Dkt. No. 12-12. She acknowledged that some bacteria, such as Enterobacter cloacae, Viridans streptococcus, and Staphylococcus, can also cause sepsis and meningitis. App. at 105-06; Br. Supp. Mot. Dismiss Ex. 12 at 4-6, Dkt. No. 12-12. She stated that amoxicillin is not effective against these bacteria. App. at 105; Br. Supp. Mot. Dismiss Ex. 12 at 4, Dkt. No. 12-12.

### b. Dr. Cook

Dr. Cook stated that she reviewed M.V.'s urinalysis report, which showed the presence of Enterobacter cloacae, Viridans streptococcus, and Staphylococcus bacteria, State Trial R. Ex. 2 at 44, Dkt. No. 14-2, but said the urinalysis lacked typical signs of infection, App. 111; Br. Supp. Mot. Dismiss Ex. 11 at 3, Dkt. No. 12-11. Dr. Cook also reviewed M.V.'s lab work. *See* App. 108-11; *see also* Br. Supp. Mot. Dismiss Ex. 11 at 2-3, Dkt. No. 12-11. She concluded that M.V.'s elevated white blood cell and platelet count was a stress response to the traumatic injury and that M.V.'s injuries were inconsistent with sepsis and meningitis. *See* App. 108-18; *see also* Br. Supp. Mot. Dismiss Ex. 11 at 2-6, Dkt. No. 12-11. In her opinion, M.V. was abused whether or not

6

she suffered a skull fracture. *See* App. 111; *see also* Br. Supp. Mot. Dismiss Ex. 11 at 3, Dkt. No. 12-11.

### c.  Dr. Glenn

Dr. Glenn stated that he reviewed M.V.'s CT scans and diagnosed a subdural hematoma. Br. Supp. Mot. Dismiss Ex. 13 at 2, Dkt. No. 12-13. He did not identify a skull fracture. *Id.*

### d.  Dr. Jenkins

Dr. Jenkins prepared an affidavit and report based on his review of the trial evidence and the foregoing responses. Br. Supp. Mot. Dismiss Ex. 14 at 7, Dkt. No. 12-14. He concluded that M.V. was suffering from a bacterial infection causing her brain to swell. *Id.* at 14. He also concluded the records indicated "Disseminated Intravascular Coagulation," which could lead to clotting abnormalities. *Id.* Dr. Jenkins stated, "[T]his phenomenon is responsible for the finding of retinal hemorrhage, subdural hematoma and petechiae." *Id.*[5]

## 2.  Actual Innocence

Mr. Lunsford argues his actual innocence claim is reasonably debatable and points to examples where courts in child abuse cases have granted post-conviction relief or

---

[5] The district court noted reasons to doubt Dr. Jenkins's credibility: "[H]e no longer has a medical license, has a significant number of criminal convictions, and lacks experience in pediatric medicine." App. at 12 n.6; *see also* Br. Supp. Mot. Dismiss Exs. 28, 29, 31, 32, 36, Dkt. Nos. 12-28, 12-29, 12-31, 12-32, 12-36.

overturned convictions based on new scientific evidence. But he has not shown how these cases apply here.

Mr. Lunsford's evidence does not show actual innocence. He asserts his new evidence "materially supports alternative medical explanations for [M.V.'s] condition, including infection, sepsis, and clotting-related mechanisms" and "challeng[es] whether the evidence established a skull fracture." App. for COA at 4. It does not.

Dr. Crow's testimony at most shows the possibility of M.V. having a bacterial infection the week before the underlying incident. And Dr. Cook's testimony expressly rejected bacterial infection as the cause of M.V.'s injuries.

As for Dr. Jenkins's report, ample trial evidence contradicts its suggestion that M.V. suffered from a bacterial infection that led to complications. The trial evidence showed that M.V. suffered from: hypothermia; bruising along her jaw, in her inner ear, on her outer ear, around both eyes, and on her forehead; bilateral retinal hemorrhaging; a subdural hematoma; multiple abrasions; and an acute injury to her liver. *See* State Ct. Trs. Ex.1 at 318, 321-22, 327, 352-56, 458, 471-76, 482-83, Dkt. No. 13-1. Dr. Jenkins's report attributes some of these injuries to complications of bacterial infection. But it fails to explain how such an infection could lead to extensive facial and inner ear bruising, or abrasions.

Dr. Jenkins based his opinions in part on two radiologist reports: Dr. Glenn's report interpreting M.V.'s first CT scan and another radiologist's report interpreting M.V.'s skeletal survey. Br. Supp. Mot. Dismiss Ex. 14 at 9, Dkt. No. 12-14. Both

radiologists noted a lack of a fracture. *Id.*; *see also* App. at 11 nn.4 & 5. These reports were admitted at trial, so they are not new evidence. State Trial R. Ex. 2 at 4-5, 86, Dkt. No. 14-2. And other trial evidence contradicted the radiologists. *See* State Ct. Trs. Ex. 1 at 468-71, 551, 627, 648, Dkt. No. 13-1. For instance, Dr. Ryan Brown testified that M.V. received two CTs, one at St. Anthony on the day of the incident and a follow up CT conducted a month later. *Id.* at 468-69. He testified that both scans revealed a skull fracture. *Id.* at 469-70. Dr. Naina Gross, M.V.'s pediatric neurosurgeon, prepared consult notes that were admitted at trial and that indicated a skull fracture. App. at 13; State Trial R. Ex. 2 at 23, Dkt. No. 14-2.[6]

Finally, several witnesses at trial testified that M.V.'s injuries were consistent with child abuse. State Ct. Trs. Ex. 1 at 410-13, 480, 489-90, Dkt. No. 13-1. For instance, Dr. Brown, a pediatric physician and board-certified child abuse specialist, testified that several of M.V.'s injuries, such as her inner ear bruising, skull fracture, subdural hematomas, and retinal hemorrhages, were particularly concerning. *Id.* at 448-49, 461-

---

[6] In the § 2254 proceedings in district court, the respondent submitted an affidavit from Dr. Gross explaining her consult note. *See* Br. Supp. Mot. Dismiss Ex. 37 at 1-2, Dkt. No. 12-37. It stated, "The Neurosurgery Consult Note indicates that it was my professional opinion that the CT scan done on [M.V.] at St. Anthony Shawnee Hospital showed . . . .a subdural hematoma, a subarachnoid hematoma, and a skull fracture." *Id.* at 1. Dr. Gross's affidavit also stated that it is not uncommon for a neurosurgeon to identify something on a head CT that a radiologist did not see and that CT scans often reveal fractures that would not be visible on X-ray scans such as skeletal surveys. *Id.* at 2.

64, 469-76.  He ruled out other causes of injuries, such as accidental falls, blood disorders, coagulation diseases, thrombocytopenia, brittle bone disease, and other underlying conditions, before concluding that the cause of M.V.'s injuries was child abuse.  *Id.* at 458-59, 465-68, 477-81, 501-02, 529-30.

In sum, Mr. Lunsford has failed to marshal evidence that would establish actual innocence.  Based on the foregoing, we conclude that Mr. Lunsford has not shown that the evidence from the state post-conviction proceedings makes it more likely than not that no reasonable jury would convict him.  We further conclude that reasonable jurists could not debate the district court's rejection of Mr. Lunsford's actual innocence claim and its denial of habeas relief as time-barred.

### III.  CONCLUSION

We deny Mr. Lunsford's request for a COA and dismiss this matter.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge